UNITED STATES of America,
Appellee,

v.

Manuel Luis CORDOVA, Appellant.

No. 24481.

United States Court of Appeals,
Ninth Circuit.

Jan. 29, 1970.

Phillip Andreen (argued), Federal Defenders, San Diego, Cal., for appellant.

Joseph A. Milchen (argued), Kevin J. McInerney, Asst. U. S. Attys., Edwin L. Miller, U. S. Atty., San Diego, Cal., for appellee.

Before BARNES and CARTER, Circuit Judges, and BYRNE,* District Judge.

JAMES M. CARTER, Circuit Judge:

Appellant was convicted by a jury of a one-count violation of 21 U.S.C. § 176a. The case was relatively simple. The only real issue was appellant's knowledge of the presence of marihuana in the car. It is undisputed that on the evening of October 20, 1968, appellant entered the United States at the Calexico border station driving a 1962 Falcon automobile. He told Customs Agent Pitt that he had nothing to declare. A search of the car by Agent Pitt revealed 37 kilo bricks of marihuana under and behind the rear seat. Appellant contended that he did not know of the presence of the marihuana. The jury, by its verdict of guilty, found that he did.

Appellant makes numerous contentions in this appeal. Five alleged errors merit discussion. (1) Was appellant's privilege against self-incrimination violated by cross-examination about his failure to cooperate with government authorities? (2) Was appellant wrongly prejudiced by the admission of evidence that he had not told customs agents certain facts as to which he testified at trial? (3) Did the United States attorney commit reversible error in closing argument by suggesting that a fellow smuggler had wanted to tell "the whole story" to customs agents? (4) Did the prosecutor wrongly suggest the appellant had the burden of proof? (5) Is 21 U.S.C. § 176a unconstitutional?

Additional factual background is necessary for a full evaluation of appellant's claims. Agent Pitt testified that appellant reached the border at about 10:45 PM. He stated he was bringing nothing into the United States. Agent Pitt detected a strong marihuana odor coming from the car. He made a further search and discovered the 37 kilo bricks. Agent Pitt further testified that about five minutes before the stopping of appellant, another Falcon automobile driven by one Jerry Martin had been impounded for illegally importing marihuana. Both vehicles had borrower's agreements in their glove compartments, indicating a right to possession by the appellant.

Agents Clemants and Goff testified that Agent Pitt turned the appellant over to them at about 11:00 PM. Agent Clemants warned appellant of his rights and asked whether he wished to make a statement. Appellant stated that he understood his rights and that he wanted to talk. He said that he had been hired

---

* The Honorable William M. Byrne, Senior United States District Judge, sitting by designation.

by one Max Martel to drive a car to Mexico for resale there. He drove the car to Mexicali and turned it over to Martel. Some time later Martel returned with the car. He told appellant that the resale had fallen through and that the car would have to be returned to Los Angeles. On the return trip appellant had been apprehended and learned for the first time that there was marihuana in the car. Appellant further admitted that he knew Jerry Martin and that he too was working for Martel.

After making his statement, appellant and Martin were transferred to the Imperial County Jail. On October 22, Agents Clemants and Goff were informed that one or both prisoners wished to talk with their arresting officers. The agents arrived at the jail and talked further with Martin and appellant. Appellant reiterated his lack of knowledge of the marihuana. However, he indicated a willingness to aid in the apprehension of Max Martel upon his release from the Imperial County Jail.

At trial, appellant testified in his own behalf. He based his defense on his lack of knowledge of the marihuana. With certain embellishments he told the jury the same story he had previously told the customs agents.

### 1. *The Self-incrimination Argument.*

■ On cross-examination appellant testified that he had offered to cooperate with the government in locating Max Martel. He was then asked whether he had spoken to government agents or given them any assistance since his release from jail. Defense counsel objected to a lack of relevance. The objection was overruled and appellant admitted that he had not been in touch with the agents since his release.

Appellant now claims that the introduction of this testimony violated his privilege against self-incrimination. He analogizes his situation to that considered in United States v. White (7 Cir. 1966) 355 F.2d 909, cert. denied, 389 U. S. 1052, 88 S.Ct. 796, 19 L.Ed.2d 846 (1968). White was arrested for using the mails in a scheme to defraud. Under the alias Puccinni he had invited bids for a number of rare weapons which he purported to own. After his arrest government officials asked White to provide handwriting specimens and to help in locating Puccinni. White *refused any cooperation.* At trial the judge admitted evidence of White's refusal to cooperate. The 7th Circuit reversed on another ground. However, they noted that this "attempt to obtain an inference of guilt from his refusal to cooperate" on the facts of the case violated the Fifth Amendment. The Circuit cautioned: "White was under no duty to build the case against himself." [page 912].

The present case stands in sharp contrast. Appellant either summoned Agents Clemants and Goff or welcomed Martin's summoning of them. At their meeting appellant suggested that he would be *willing to cooperate* with the Government in the one way that would be meaningful, assisting in the arrest and conviction of major drug dealer, Max Martel. The conclusion is inescapable that appellant was shrewdly gambling that he could escape punishment by helping the agents catch a more desirable suspect. We do not believe that the Fifth Amendment bars the prosecution from pointing out that appellant welshed on his agreement. Such evidence is certainly relevant to the jury's evaluation of appellant's credibility.

### II. *The Variation in Appellant's Stories.*

■■ After appellant had completed his testimony, the prosecution recalled Customs Agent Goff. Agent Goff testified that several items of appellant's explanatory testimony to the jury had not been mentioned during his discussions with appellant. A relevance objection was overruled. Appellant now contends that his earlier silence was improperly viewed by the jury as an inference of guilt.

Appellant relies on Fowle v. United States, (9 Cir. 1969) 410 F.2d 48 and Helton v. United States, (5 Cir. 1955) 221 F.2d 338. Neither case controls. In *Fowle* the defendant chose to remain silent at the time of his arrest. At trial the arresting officer testified that defendant had not given the explanation of his conduct that he had given to the jury. This was held error for penalizing the defendant's *right to remain silent*. Similarly, in *Helton,* defendant did not discuss the crime with the arresting officers. At trial, his silence at arrest was testified to by the officers. The circuit court found reversible error.

There is a major difference between the situation in the case at bar and that in *Fowle* and *Helton*. There the defendants chose to remain silent at the time of arrest and this silence was used against them at trial. Here the defendant did not choose to remain silent at the time of his arrest or of his subsequent interrogation. Inconsistencies or omissions in his exculpatory explanation and his testimony at trial were properly presented by testimony of the arresting officer and on defendant's cross examination. They did not violate appellant's privilege against self-incrimination.

Nor do we find merit to appellant's objection in the court below that the evidence was irrelevant. The Government correctly points out that this evidence went to showing the false or misleading character of appellant's exculpatory statements at trial. The Government concedes that no statements made to the customs agents directly impeached testimony at trial. Agent Goff's testimony went to matters of omission rather than contradiction. However, such evidence was relevant. It spoke to the validity of appellant's explanation of his conduct on the day of his arrest. Conceivably a jury may have attributed the variations to honest lapses of memory or to appellant's belief that certain details were unimportant except at trial. If so, no prejudice resulted. More likely, however, the jury interpreted the variations as suggesting that appellant was being quite cautious in making his exculpatory statements to the customs agents. Such evidence was relevant in weighing appellant's claim that he had done no conscious wrong. Certainly the trial judge did not commit reversible error by admitting it.

### III. *Martin's Willingness to Tell "The Whole Story."*

■ During closing argument, the prosecutor recalled that the customs agents had questioned both Martin and appellant. The argument proceeded: "And you recall testimony from the agents, they said, 'I understand you want to speak to us?' 'Yes' in effect 'what we wanted to do was to tell the whole story.' " Appellant contends that there was no evidence before the jury that Martin had requested the interview or that Martin had wanted to "tell the whole story." Appellant argues that the prosecutor's statements suggested to the jury that Martin had confessed his knowledge of the marihuana; and that such a confession then tainted the determination of appellant's guilt in violation of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

This ingenious argument collapses from its own lack of evidentiary and logical support. Evidence in the record permitted the jury to draw the inference that Martin and defendant were acting in concert. The customs agents told of the similar arrests, the evidence of common employment and appellant's admission that he knew Martin. Agent Goff mentioned that he talked to Martin prior to his jailhouse discussion with appellant. Finally, a tape recording of that discussion with appellant, introduced by the defense at trial, preserved the following statement of Agent Clemants: "[F]rom what you said, from what Jerry [Martin] said, and from what we know, if *you guys* will testify I think we can pick this guy up for conspiracy right now, and convict him like that." [Emphasis added].

We are also unable to agree with appellant that the only conclusion to be drawn from the prosecutor's statement was that Martin had fully incriminated himself. A more logical conclusion was that Martin had offered the same cooperation and the same "whole story" as appellant. This would bolster rather than weaken appellant's position.

## IV. The Prosecutor's Argument on the Burden of Proof.

 The prosecutor stated in closing argument: "Now the big issue here is knowledge of whether the marihuana was in the car. You see the *burden of the defense* is to try to convince you that he knew nothing about it; no knowledge. This is what his burden is here." [Emphasis added].

The burden of proof and the burden of the defense are two different things. The court correctly instructed that the Government had the burden of proof on every element of the offense. The real issue was knowledge and the defense was attempting to prove appellant had no knowledge of the marihuana found in the car he, alone in the car, drove across the border.

Graham v. United States, (6 Cir. 1958) 257 F.2d 724 is not in point. There the prosecutor argued an erroneous principle of law, "that once the Government proved that the defendant had narcotic drugs in his possession, then the defendant had to prove that he got it from a doctor or a druggist. This was not a correct construction of the statute or of the issue in the case. * * * Possession by appellant under circumstances claimed by him to exist in this case, was, if believed by the jury, also a valid defense to the charge." [pages 729–730].

In view of the facts and the proper instruction to the jury, we do not believe the jury was confused. If the statement was error, which we do not believe it was, it was harmless.

## V. The Constitutionality of 21 U.S.C. § 176a.

 Appellant concedes that Witt v. United States, 413 F.2d 303 (9 Cir.) holds that 21 U.S.C. § 176a, absent the use of the presumption contained therein, is constitutional, but "submits the question". We agree with *Witt* and *Witt* controls this part of the case.

We have considered the other contentions made by appellant. None justify discussion here or require reversal.

The judgment is affirmed.