Allen Carl SIDNEY, Appellant,

v.

STATE of Alaska, Appellee.

No. 2659.

Supreme Court of Alaska.

Nov. 18, 1977.

Barbara J. Miracle, Asst. Public Defender, and Brian Shortell, Public Defender, Anchorage, for appellant.

Ivan Lawner, Asst. Dist. Atty., and Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

OPINION

Before BOOCHEVER, C. J., RABINOWITZ, CONNOR and BURKE, JJ., and DIMOND, J. Pro Tem.

CONNOR, Justice.

Allen Carl Sidney, a 58-year-old man who suffered from the effects of a stroke, shot and killed Fay Kiyutelluk, also known as Faye Brown, on December 17, 1974, in Sidney's home in Anchorage. According to Sidney, the victim was trying to steal Sidney's money at the time.

## I

Sidney was charged with murder and convicted of manslaughter as a lesser included offense. He alleges two errors: (1) admission of evidence obtained three days after his arrest, while he was in jail, from a warrantless search of his personal effects held by jail custodians; and (2) evidence and comment by the prosecution at trial that he had not given certain information to the police.

When Sidney was initially questioned at the police station, the officers had him empty his pockets. He produced a wallet containing some cash, and a watch with no watchband. When Sidney was booked into the jail, the wallet and watch were, in accordance with standard jail procedure, placed in a property bag and put in a storage locker. Sidney signed a receipt which listed the property "held in trust for me by this institution."

In the course of their investigation, the police obtained from a friend of the deceased some of the victim's personal effects that had been found in Sidney's house after he was taken to the police station. Among them was a wide leather watchband without a watch. This witness, Ingram, told the police that another witness, Joseph Edward Wingate, also known as "P. J.," the victim's boyfriend, could probably identify the victim's watch. Wingate told the police he probably could identify the watch, and the police took him to the jail, three days after the arrest. The watch which had been taken from Sidney was taken out of storage and shown to Wingate, who identified it as having belonged to the victim.

On the basis of Wingate's identification, the police obtained a search warrant to seize the watch, and promptly executed the warrant. Sidney moved to suppress the watch on the ground that the search by the police when they brought Wingate to the jail was invalid. After a hearing, the superior court denied the motion to suppress.

At trial, the prosecutor contended that Sidney's possession of the victim's watch was evidence that Sidney had stolen it, and killed the victim in order to do so. This would negate Sidney's theory of self-defense. Sidney said the victim gave him the watch to take to a repair shop.

Sidney makes three claims of invalidity of the search: principally under the fourth amendment and art. I, section 14 of the state constitution (unreasonable search and seizure), and somewhat perfunctorily as a violation of his right to privacy and as a denial of equal protection, since the property of a bailed defendant could not have been searched and seized in the manner in which Sidney's property was searched.

Normally we would find these questions both interesting and meritorious, but given the peculiar facts of this case we find it unnecessary to reach them. We are convinced that any possible error in the admission of the watch was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *cf. Love v. State*, 457 P.2d 622 (Alaska 1969).

The jury was instructed that second-degree murder [1] (AS 11.15.030) is killing "purposely and maliciously" and that manslaughter (AS 11.15.040) is killing done "wilfully, unlawfully, and without justification." The jury was then instructed on justification as a complete defense—either self-defense or prevention of a felony. Larceny in a dwelling house, they were told, is a felony under AS 11.20.150, and "larceny" was defined under the general provisions of AS 11.20.140. Finally, they were instructed that an accidental killing is excusable if it results from an act undertaken "with usual and ordinary caution," as provided by AS 11.15.110.

The prosecution's theory was that the killing was purposeful, malicious, and unprovoked. The defense theory was that Sidney should be acquitted because he killed in defense of self and property. The

1. Sidney had been indicted for first-degree murder. At the conclusion of the state's case, the judge granted a judgment of acquittal of first-degree murder, but permitted the case to proceed on second-degree murder.

jury accepted neither theory; they found Sidney guilty of manslaughter—without malice, but lacking justification. Neither counsel discussed manslaughter in his closing argument.

■ It seems to us most logical that the jury found that Sidney acted in self-defense, i. e., without malice, but used force that was excessive under the circumstances, i. e., without justification. In closing argument, the prosecutor stressed that Sidney was six feet tall and weighed 220 pounds, while the deceased was five foot, one inch and weighed 100 pounds, and was severely under the influence of alcohol at the time of her demise.[2] He ridiculed Sidney's testimony and argument that his stroke had left him seriously physically impaired; there was contrary testimony.

Wingate's testimony was based on his prior observation of the watch when owned by the deceased and he presumably could have given the same testimony even if the watch were not in evidence.

The watch is not claimed to have played any part in the immediate circumstances of the moment of shooting. Sidney admitted shooting the decedent.

Furthermore, the only dispute about the watch concerned the manner in which Sidney obtained possession. As to this, the watch itself could provide no information. The watch added little or nothing to the verbal testimony of the two police officers and two private citizens concerning it. This is true even if the testimony of these four witnesses is as weak as appellant asserts that it is. The prosecutor could have made the same arguments that he did about the watch even if the watch itself had not been introduced into evidence.

■ Constitutional error, to be found harmless, must be harmless beyond a reasonable doubt. *Chapman v. California, supra; cf. Love v. State, supra.*

If the jury had convicted Sidney of second-degree murder, we would be confronted with a different question. But when the watch is viewed in terms of the difference it might have made in whether Sidney obtained an outright acquittal or was convicted of manslaughter, its admission in evidence could not have played a significant part. Assuming, without deciding, that the admission of the watch was error, we are convinced that any such error was harmless beyond a reasonable doubt.

II

Sidney himself called an ambulance for the victim. Police also responded to the ambulance call. He was taken to the police station in handcuffs by an officer. At the station, he was given his *Miranda* warnings. At first the police thought he was under the influence of alcohol, but he told the police that his speech was impaired as a result of a stroke. He waived his *Miranda* rights and began to talk about the shooting incident. He took about ten or fifteen minutes to describe the incident from beginning to end. A policeman brought in a tape recorder to record Sidney's statement, at which time he asked for a lawyer. The police called the public defender's office, and Mr. Phillip Weidner came to the police station. Sidney was not questioned further.

At trial, during the prosecution's case in chief, the prosecutor elicited from Investigator Rice, who questioned Sidney, some of the things which Sidney did *not* say. On cross-examination, defense counsel elicited the fact that Rice did not ask Sidney about these things.

In rebuttal, the state called the other interrogating officer, Investigator Dennis, who testified that Sidney did not tell the police some of the facts he testified to at trial. Investigator Rice was recalled and testified similarly.

In his closing argument, the prosecutor commented on Sidney's failure to tell the police all the material points to which he testified at trial.

At no time did defense counsel object to any of the above testimony or prosecutorial

2. The victim's blood alcohol content was .376 percent.

comment on the ground that it violated Sidney's privilege against self-incrimination.[3] Now on appeal he asks that we regard the admission of this evidence and the prosecutorial comment as plain error.

 We will consider whether error was committed, despite the absence of an objection, when the error, if any, would have directly affected a fundamental constitutional right.[4]

 If what the state did here amounted to evidence or commentary on silence on the part of the accused, or on an assertion by him of fifth or sixth amendment rights, there is no question that it would be error. We agree with the cases cited by appellant to that effect: *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); *Grunewald v. United States*, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957); *Fowle v. United States*, 410 F.2d 48 (9th Cir. 1969); *Jackson v. United States*, 250 F.2d 897 (5th Cir. 1958). But this is not the problem presented. In the case at bar the defendant did not remain silent. He purported to give a rather complete statement of what had occurred. Omissions and inconsistencies in his exculpatory statement could properly be pointed out at trial. *See United States v. Cordova*, 421 F.2d 471 (9th Cir. 1970), *cert. denied*, 398 U.S. 941, 90 S.Ct. 1856, 26 L.Ed.2d 276 (1970); *Agnellino v. New Jersey*, 493 F.2d 714, 728–29 (Seitz, C. J., concurring) (3rd Cir. 1974). We read *Doyle v. Ohio, supra*, as not changing that rule. Accordingly, there was no error in the admission of that evidence or in the prosecutor's comments on it.

AFFIRMED.

---

3. Objections to portions of the testimony were made on such grounds as that the evidence was cumulative, repetitive, or not relevant.

4. *See* Alaska R.Crim.P. 47(b); *Martin v. State*, 517 P.2d 1399, 1402 (Alaska 1974); *Burford v. State*, 515 P.2d 382 (Alaska 1973); *Newsom v. State*, 512 P.2d 557, 560 (Alaska 1973).