656 P.2d 1186 (1982)
Miller Z. WESTON, Appellant,
v.
STATE of Alaska, Appellee.
No. 5734.
Court of Appeals of Alaska.
December 17, 1982.
*1187 Charlene Lichtmann, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.
Elizabeth H. Sheley, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.
Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION
SINGLETON, Judge.
Miller Weston was convicted of murder in the first degree and sentenced to a term of forty years. He appeals, raising several points: (1) the trial court erred by not instructing the jury on self defense; (2) the jury instruction regarding first degree murder was inadequate; (3) the prosecutor, in the presence of the jury, improperly referred to Weston's invocation of his right to remain silent; (4) the state did not disprove Weston's heat of passion defense; and (5) the sentence is clearly excessive. We find Weston's arguments to be without merit and therefore affirm the conviction and sentence.

FACTS
On June 9, 1980, around 3:30 p.m., Weston went to the beach in Barrow, Alaska. Donald Ahsoak was also on the beach that day with several of his friends, drinking whiskey. Eventually, Weston joined Ahsoak's group and began drinking also. At about 6 p.m., Ahsoak and Weston went to Ahsoak's home to continue drinking. At about 9:30 p.m., Ahsoak left and returned shortly.
Prior to trial, Weston was unable to recall exactly what happened after Ahsoak returned. However, after hypnosis, Weston testified as to what he could remember. Weston stated that when Ahsoak returned, he got up and told Ahsoak he was going to leave. Ahsoak questioned Weston about his money and Weston replied that he did not know what Ahsoak was talking about. At that point, Ahsoak said, "Come on you Yupik thief, where's my money?" Weston testified that Ahsoak then came at him with a knife.
A struggle ensued and finally Weston was able to knock the knife from Ahsoak's hand. Ahsoak fell down. Weston testified that he was very angry and scared at that point. Weston got on top of Ahsoak and pinned Ahsoak's arms down with his legs. He told Ahsoak that he was going to kill him. Weston then grabbed the knife and slit Ahsoak's throat several times, killing him. Weston said that his "force and anger killed Mr. Ahsoak."
After the homicide, Weston changed from his bloody clothes into a snowsuit he found in Ahsoak's house. He then went to a friend's house. Later his friend accompanied him to the police station.

I. SELF DEFENSE INSTRUCTION
Weston claims that the trial judge erred by not instructing the jury on perfect self defense. The jury was instructed as to first-degree murder, second-degree murder, and manslaughter, and as to the defenses of heat of passion and imperfect self defense.
A person is justified in using deadly force when he reasonably believes that use of deadly force is necessary to defend himself from death or serious physical injury. AS 11.81.335. Such justification is a defense to homicide. AS 11.81.300. This is "perfect" self defense which, if established, exonerates the defendant. It requires both a subjective good faith belief that self defense is necessary and that a reasonable person under the same circumstances would have had that belief.
"Imperfect" self defense permits a subjective belief as to justification to reduce murder to manslaughter even if it is unreasonable. The jury was instructed that this affirmative defense applied only to first-degree murder or those forms of second-degree *1188 murder requiring intent to cause serious physical injury or knowing conduct.[1]
Imperfect self defense is closely related to perfect self defense. The jury rejected *1189 imperfect self defense. Thus, if the jury did not find that Weston had even an unreasonable belief that he must kill Ahsoak, it necessarily follows that they would not find perfect self defense. Therefore, even if a perfect self defense instruction was warranted by the facts, failure to give it was harmless error.[2]Burke v. State, 624 P.2d 1240, 1256 n. 20 (Alaska 1980).

II. ADEQUACY OF FIRST-DEGREE MURDER INSTRUCTION
Weston claims that the trial court erred in failing to instruct the jury on the element of premeditation and to define the element of intent needed for first-degree murder. No objection was made to the instruction as given.[3] The issue is therefore waived and we find no plain error. Alaska R.Crim.P. 30(a), 47(b).

III. PROSECUTOR'S COMMENTS
Weston objects to comments made by the prosecutor on cross-examination and in closing arguments. Weston testified on his own behalf at trial. On cross-examination the prosecutor asked him about the statements he had made to the police.[4] Weston's *1190 counsel moved for a mistrial asserting that the prosecutor's question contained an improper reference to Weston's invocation of his right to remain silent.[5] Judge Hodges denied the motion, holding that the prosecution was merely trying to rebut the attempt by the defense to show how cooperative Weston had been with the police.[6]
In Gunnerud v. State, 611 P.2d 69, 75 (Alaska 1980), the supreme court noted that "prosecutorial comment on silence for substantive or impeachment value is constitutionally prohibited." See Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). A month after Gunnerud was decided, the United States Supreme Court clarified the holding of Doyle in Anderson v. Charles, 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980). The court stated:

Doyle bars the use against a criminal defendant of silence maintained after receipt of government assurances. But Doyle does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving Miranda warnings has not been induced to remain silent.
Id. at 408, 100 S.Ct. at 2182, 65 L.Ed.2d at 226. The cross-examination in this case does not refer to Weston's exercise of his right to remain silent, but rather to inconsistencies between what he told the jury regarding his willingness to cooperate with the police investigation and what he in fact told the police.
The Anderson clarification of Doyle is in accord with United States v. Fairchild, 505 F.2d 1378 (5th Cir.1975), which directly applies to this case. In Fairchild, the court faced a similar problem of prosecutorial comment about the defendant's silence after the defense presented evidence of cooperation with police. The court recognized that when the defendant became a witness his testimony was open to legitimate attack. Id. at 1382. However, "to be admissible, keeping silence [sic] must be much more than ambiguous. It must appear to be an act blatantly inconsistent with the defendant's trial testimony." Id.
Weston offered testimony that he cooperated with the police. The fact that he told police he "didn't want to talk about it anymore" is "blatantly inconsistent" with an assertion that he was cooperating. Having raised the question of cooperation, Weston opened the door to full development of that subject.
Evidence of a defendant's silence is excluded for the purpose of protecting his right not to incriminate himself. "It is not excluded so that the defendant may freely and falsely create the impression that he has cooperated with the police when, in fact, he has not." Id. at 1383. Thus, evidence of Weston's silence was admissible "for the purpose of rebutting the impression which he attempted to create: that he cooperated fully with the law enforcement authorities." Id. See also United States v. Cordova, 421 F.2d 471 (9th Cir.), cert. denied, 398 U.S. 941, 90 S.Ct. 1855, 26 L.Ed.2d 276 (1970). The trial court did not err in admitting the prosecutor's questions on cross-examination.
The second comment on Weston's silence occurred during the prosecutor's closing argument when he mentioned Weston's failure to tell the police about Ahsoak's plea for mercy.[7] No objection was made to this comment at trial, however, so this must be plain error to merit reversal.
The court will consider whether error was committed, even if there was no objection, "when the error, if any, would have directly affected a fundamental constitutional right." Sidney v. State, 571 P.2d *1191 261, 264 (Alaska 1977). In Sidney, the prosecutor, in closing argument, commented on Sidney's failure to tell the police all the material points to which he testified at trial. The court reviewed the prosecutor's comments on appeal under the plain error doctrine:
If what the state did here amounted to evidence or commentary on silence on the part of the accused, or on an assertion by him of fifth or sixth amendment rights, there is no question that it would be error .... But this is not the problem presented. In the case at bar the defendant did not remain silent. He purported to give a rather complete statement of what had occurred. Omissions and inconsistencies in his exculpatory statement could properly be pointed out at trial.
Id. at 264.
The holding in Sidney is directly applicable to this case. Weston spoke freely to the police after the killing. However, at trial, Weston testified as to facts not previously revealed. The prosecution properly could point out the incompleteness of the statements to the police. Thus, there was no error in the admission of the prosecutor's comments.

IV. HEAT OF PASSION DEFENSE
Weston claims that the evidence produced at trial was insufficient to support the state's theory or the jury's verdict that the state proved beyond a reasonable doubt that Weston had not acted in the heat of passion. See Padie v. State, 557 P.2d 1138, 1141 n. 2 (Alaska 1976).
Heat of passion must result "from a serious provocation by the intended victim." AS 11.41.115(a). Insulting words, as a matter of law, are not "serious provocation." AS 11.41.115(f)(2).
At trial Weston claimed that Ahsoak called him a "Yupik thief" and came at him with a knife. The state challenged this assertion by introducing substantial evidence from which a reasonable person could have believed that Ahsoak would not have physically assaulted Weston.[8] Weston was not entitled to a judgment of acquittal. Davis v. State, 635 P.2d 481, 483-84 (Alaska App. 1981).

V. SENTENCE
Judge Hodges sentenced Weston to a forty-year term with a recommendation for alcohol counseling during incarceration. Weston claims this is an excessive sentence.
First-degree murder is an unclassified felony requiring a definite sentence of twenty to ninety-nine years. AS 12.55.125(a). After balancing the nature of the crime, the personal facts about the defendant, and the Chaney criteria,[9] the sentencing judge imposes an appropriate sentencing within the minimum and maximum allowed. See AS 12.55.005.
Judge Hodges stated that the taking of a human life is the most serious crime anyone can commit, but he also stated that Weston could not be classified as the worst type of offender within the first-degree murder statute. Judge Hodges considered Weston's ongoing problem with alcohol abuse and his prior misdemeanor record which included several instances of drunk driving, disorderly conduct, assault, and joyriding. Judge Hodges stated that Weston is a dangerous offender when drinking. He placed great weight on reaffirming society's norms and the need to deter others by showing that this type of conduct will not be tolerated. Weston's potential for rehabilitation was considered important, but his good prognosis *1192 did not outweigh society's need for protection through general deterrence and the affirmation of community norms.
In light of the careful consideration of all the facts and factors, we cannot say that Judge Hodges was clearly mistaken in imposing the forty-year sentence (less than half of the maximum term allowed). McClain v. State, 519 P.2d 811 (Alaska 1974). See Tugatuk v. State, 626 P.2d 95, 104 (Alaska 1981). See also Vail v. State, 599 P.2d 1371, 1382 (Alaska 1979) (life sentence for first-degree murder upheld although defendant not classified as worst type of offender and had shown that he had some rehabilitative potential).
The conviction and sentence are AFFIRMED.
NOTES
[1] There was no objection to the imperfect self defense instruction, and we express no opinion as to the appropriateness of an imperfect self defense instruction under Alaska law. Cf. Houston v. State, 602 P.2d 784 (Alaska 1980) (failure to submit an imperfect self defense instruction was not improper under former Alaska Criminal Code). The imperfect self defense instruction given in this case consisted of five parts:

Instruction 14
It is an affirmative defense to murder in the first degree, and murder in the second degree involving intent to cause serious physical injury or knowing conduct, if the defendant proves by a preponderance of the evidence that at the time of the homicidal act, he honestly but unreasonably believed that the circumstances were such that, had they been as he believed them to be, they would have constituted justification for the killing.
As used in these instructions affirmative defense means that some evidence must be admitted which places in issue the defense, and the defendant then has the burden of establishing the defense by a preponderance of the evidence.
A killing done under an unreasonable belief as to justification reduces murder in the first degree, and murder in the second degree involving intent to cause serious physical injury or knowing conduct, to manslaughter; it is not a defense to murder in the second degree involving intentionally performing an act, or to manslaughter.
Instruction 14(a)
I will now define for you the law of self-defense. These instructions are only to be used in conjunction with instruction No. 14. They are not to be used as a defense to second degree murder involving intentionally performing an act or to manslaughter.
A person may use deadly force upon another person when and to the extent that the person reasonably believes the use of deadly force is necessary to defend himself from death or serious physical injury.
In order to justify the taking of a human life in self-defense, a defendant, as a reasonable person, must have reason to believe and must believe that he is in danger of death or of great bodily injury; and further, the circumstances must be such than an ordinarily reasonable person, under similar circumstances, would believe that it was necessary for him to use, in his defense and to avoid death or great bodily injury to himself, such force or means as might cause the death of his adversary.
The law of self-defense states generally that this defense is available to a defendant who uses force to secure himself from danger only when such person is in a place he has a right to be, doing what he has a right to do. The defense is ordinarily not available to a person who provokes a difficulty from which he attempts to extricate himself with excessive force unless the evidence shows that such person abandons his initial purpose and retreats from the difficulty initially provoked and is placed in danger thereafter by an aggressive act of another.
Instruction 14(b)
The right of self-defense exists only as long as the real or apparent danger threatened continues to exist. When the danger has ceased to exist, the right to use force in self-defense is ended.
A person must in the exercise of the right of self-defense act honestly and conscientiously, and not from anger, malice or revenge. While a person may exercise a reasonable degree of force to repel an attack, that person must not provoke and intentionally bring upon himself an attack in order that he may have an apparent excuse for killing his assailant.
A person may not use deadly force if he knows that he can with complete safety as to himself and others avoid the necessity of so doing by retreating.
Instruction 14(c)
Actual danger is not necessary to justify self-defense. If one is confronted by the appearance of danger which arouses in his mind, as a reasonable person, an honest conviction and fear that he is about to suffer death or great bodily harm, and, if a reasonable person in a like situation, seeing and knowing the same facts, would be justified in believing himself in like danger, and if the person so confronted acts in self-defense upon such appearance and from such fear and honest convictions, his right of self-defense is the same whether such danger is real or merely apparent.
The kind and degree of force which a person may lawfully use in self-defense is limited by what a reasonable person in the same situation as such person, seeing what he sees and knowing what he knows, then would believe to be necessary. Any use of force beyond that is regarded by the law as excessive. Although a person may believe that he is acting, and may act, in self-defense, he is not justified in using a degree of force clearly in excess of that apparently and reasonably necessary under the existing facts and circumstances.
Instruction 14(d)
A bare fear of death or great bodily injury is not sufficient to justify a homicide. To justify taking the life of another in self-defense, the circumstances must be such as to excite the fears of a reasonable person placed in a similar position, and the party killing must act under the influence of such fears alone. The danger must be apparent and must be present and imminent, or must so appear at the time to the slayer as a reasonable person, and the killing must be done under a well-founded belief that it is necessary to save oneself from death or great bodily harm and not in a spirit of revenge.
One who because of voluntary intoxication thinks that he is in danger of imminent attack, though a sober man would not have thought so, does not have the reasonable belief which the law requires.
[2] Instruction 14(a), see supra n. 1, recites the requirements of perfect self defense. The instruction was to be read in conjunction with the rest of instruction 14, imperfect self defense. The jury was, therefore, actually informed as to what constitutes perfect self defense. The only information the jury did not receive was that Weston could be acquitted altogether, rather than be found guilty of a reduced charge of manslaughter if they found self defense as defined by instruction 14(a).
[3] Instruction 6.

A person commits the crime of murder in the first degree if, without legal justification, and with intent to cause the death of another person, he causes the death of any person.
In order to establish the crime of murder in the first degree, it is necessary for the state to prove beyond a reasonable doubt the following:
First, that the event in question occurred at or near Barrow, Alaska, and on or about June 9, 1980;
Second, that Miller Z. Weston intended to cause the death of another person; and
Third, that the defendant caused the death of Donald O. Ahsoak.
If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you shall find the defendant guilty.
If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you shall find the defendant not guilty.
[4] The following is an excerpt from that line of questioning.

Q. All right, sir. Let's go back to the first interview. Turn to page 16. Sir, isn't it true that you told  in addition to telling Capt. Christensen that Mr. Ahsoak didn't say anything when he jumped you with the knife, also that you didn't know any reason why he did jump you you [sic] with the knife?
A. Yes, I said no after that.
Q. Sir, during these interviews when Capt. Christensen asked you several times why you were so mad.
A. Yes, I remember that.
Q. And did you ever tell him a reason in all of them?
A. I told him, "I don't know."
Q. In fact in the last interview sir, the one that was done shortly after noon on the 10th he asked you that repeatedly and you finally said you didn't want to talk about it anymore, is that right?
A. Yes, because I was in a state of shock also.
The questioning continued:
Q. Sir, the first time that you talked to Capt. Christensen, the very first time, right after you went to the station, did you tell him anything about leaving any of your clothes in Mr. Ahsoak's house?
A. I  I don't remember if I said it in my first interview. I just don't recall.
* * * * * *
Q. Okay sir, so upon looking in there, do you see any place where you mention to Capt. Christensen that your own clothes were in Mr. Ahsoak's house?
A. No.
[5] It is not clear that Weston was invoking a right to remain silent when he made those statements. For purposes of this case, however, we are assuming he was.
[6] The prosecutor's questions came after the defense called an investigator who testified that Weston had cooperated voluntarily with the police.
[7] At trial, Weston testified that he told Ahsoak that he was going to kill him and that Ahsoak replied, "Don't, don't Miller."
[8] The state produced testimony that Ahsoak was a peaceful person even when drinking. Furthermore, Dr. Probst, the pathologist, testified that "defense wounds" were found on Ahsoak's body and that Ahsoak had a blood alcohol content of 0.269%. It would have been obvious to an observer that he had been drinking because he probably would have been staggering, had slurred speech, and perhaps exhibited mental confusion. Also, although Ahsoak may have been a little larger man than Weston, he was 60 years old while Weston was 26. Finally, Dr. Probst testified that a "relatively large amount of force" had to have been exerted with the dull knife.
[9] State v. Chaney, 477 P.2d 441 (Alaska 1970).