Ronald J. BLOOMSTRAND, Appellant,

v.

STATE of Alaska, Appellee.

No. 5822.

Court of Appeals of Alaska.

Dec. 30, 1982.

John R. Vacek, Asst. Public Defender, Nome, and Dana Fabe, Public Defender, Anchorage, for appellant.

Rhonda F. Butterfield, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Ronald J. Bloomstrand was indicted for first degree murder in connection with the shooting death of Harris Okboak. Following a jury trial, Bloomstrand was convicted of the lesser-included offense of manslaughter and was sentenced by Superior Court Judge Paul Jones to a twelve-year term of imprisonment, with parole eligibility expressly restricted for the first five years of the sentence. Bloomstrand appeals his conviction and his sentence, alleging a variety of grounds for reversal. Upon consideration of Bloomstrand's arguments, we affirm his conviction and sentence.

## I. FACTUAL BACKGROUND

On June 22, 1980, Bloomstrand drove some friends from Nome to Teller. During the return trip that same day, Bloomstrand consumed a substantial amount of alcohol. Upon returning to Nome at approximately 6:30 p.m., Bloomstrand went to a local bar, the Board of Trade (BOT), where he continued to drink. At the BOT Bloomstrand met Harris Okboak, and the two of them spent the evening drinking at the BOT and the nearby Polar Bar. At approximately 10:30 p.m., Bloomstrand drove to his home, accompanied by Okboak. Within an hour, at about 11:30 p.m., Bloomstrand arrived at the home of Eddie Ottinger, his friend and co-worker. Bloomstrand told Ottinger, "I just shot a man's head off." At first Ottinger did not believe Bloomstrand's statement. However, after Bloomstrand repeated the statement a number of times, Ottinger asked him if he had called the police, and Bloomstrand replied that he had. Ottinger then left his home, went to the police station and reported what Bloomstrand had told him. Ottinger learned that Bloomstrand had not reported the shooting.

Upon receiving Ottinger's report, two police officers went to Bloomstrand's apartment, where they found Okboak's body on the kitchen floor, with a single bullet wound to the head. Okboak was dead when the police found him. A search warrant subsequently obtained for Bloomstrand's house resulted in discovery of a Colt .357 revolver, one spent .357 cartridge and one loaded .357 cartridge; all were found under the bed in Bloomstrand's bedroom. The gun was later determined to be the one that caused Okboak's death.

Bloomstrand was placed under arrest at Ottinger's house shortly after the discovery of Okboak's body. Upon arrest, Bloomstrand asked the police why he had been arrested, what he was supposed to have done, and whom he was supposed to have killed. Arresting officers asked Bloomstrand to submit to a breathalyzer test, but Bloomstrand refused.

On the day after the shooting, June 23, 1980, Bloomstrand's employer, James West, talked to Bloomstrand and asked him what had happened. At first, Bloomstrand said that he did not know what happened. Later in the conversation, however, he told West that he and Okboak had been talking about trading Bloomstrand's revolver for Okboak's .30–.30 rifle. Bloomstrand told West that he handed Okboak the revolver, and the next thing he knew was that the gun went off. Bloomstrand indicated to West that he had then panicked and run. West questioned Bloomstrand as to where the revolver might be, and Bloomstrand said he did not know. West also asked Bloomstrand why he did not report the shooting to the police. Bloomstrand gave no answer to this question.

Approximately a month after the shooting, Bloomstrand again talked to Ottinger about the offense. Bloomstrand told Ottinger that he and Okboak had been "messing with the gun"; that Okboak had the gun and snapped it at Bloomstrand's stomach a couple of times; that Okboak then handed him the gun and that he snapped the gun at Okboak's head, when it went off.

At trial, Bloomstrand claimed that he did not recall much of what happened in the bars on the evening of the shooting, but that he did remember going to his apartment with Okboak. Bloomstrand testified that after arriving at the apartment, Okboak asked to see his pistol, and Bloomstrand got it and handed it to Okboak, who cocked the hammer. Bloomstrand stated that he could only recall that Okboak handed the gun back to him when it was still cocked and that as Bloomstrand took the gun, Okboak fell away from him and Bloomstrand slipped or tripped and found himself lying on the floor against the wall. According to Bloomstrand, the next thing he remembered was being told by a judge that he had been charged with first degree murder. Bloomstrand claimed that he did not recall his conversation with Ottinger immediately after the shooting or his statements to West on the day after the shooting.

After Bloomstrand's arrest and arraignment on June 23, 1980, a preliminary hearing was set for July 2, 1980. This hearing

was apparently canceled because the grand jury convened on July 2 to consider evidence against Bloomstrand. An indictment for first degree murder was returned on July 3. Bloomstrand later moved to dismiss the indictment; he alternatively sought a post-indictment preliminary hearing. This motion was denied by the superior court.

## II. FAILURE TO PROVIDE A PRELIMINARY HEARING

■ Bloomstrand's initial argument on appeal is that he was arbitrarily denied a preliminary hearing, in violation of his constitutional rights to due process and equal protection. We have previously considered an identical claim and have held that the failure to allow a preliminary hearing does not violate a defendant's rights to due process and equal protection. *Pascua v. State,* 633 P.2d 1033, 1034 n. 3 (Alaska App.1981). Bloomstrand's argument is controlled by our decision in *Pascua.*

## III. COMMENT ON EXERCISE OF THE RIGHT TO REMAIN SILENT

Bloomstrand next contends that, at his trial, the prosecution was improperly allowed to elicit testimony about and comment on his exercise of the right to remain silent. Specifically, Bloomstrand alleges that error was committed when James West was allowed to testify that, after Bloomstrand had told him how the shooting had occurred, West asked Bloomstrand why he failed to call the police, and Bloomstrand failed to answer this question. Bloomstrand notes that under the state and federal constitutions he had the right to remain silent[1] and that the prosecution cannot comment upon his assertion of this right. *See Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106, 110 (1965). Bloomstrand contends that the use at trial of his failure to report the shooting to the police amounted to a comment on his assertion of the constitutional right to remain silent. He further posits that the error of admitting this evidence was compounded by the fact that the prosecutor

1. U.S. Const. amend. V.; Alaska Const. art. 1, § 9.

emphasized it in his closing argument. We reject Bloomstrand's argument.

■ It is well settled, under both federal and Alaska law, that prosecutorial comment on a defendant's post-arrest silence is prohibited. *See Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *Gunnerud v. State,* 611 P.2d 69, 75 (Alaska 1980). The United States Supreme Court has recently held, however, that comment on a defendant's pre-arrest silence is not constitutionally prohibited. *Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980). The propriety of comment on pre-arrest silence under the Alaska Constitution has not specifically been addressed. Arguably, the testimony concerning Bloomstrand's failure to respond to West's inquiry involves comment on both pre-arrest and post-arrest silence, since Bloomstrand's failure to report the shooting prior to his arrest and his refusal to explain this failure to West following arrest might both be construed to have amounted to an assertion of the right to silence. However, we find that under the particular facts of this case, it is unnecessary for us to determine whether and to what extent the Alaska Constitution protects a defendant from comment by the prosecution on his invocation of the right to remain silent.

■ During the prosecution's case-in-chief at trial, Eddie Ottinger was called as a witness to testify about Bloomstrand's contact with him on the night of the shooting. Ottinger testified, without objection by the defense, that Bloomstrand informed him that he (Bloomstrand) had already reported the shooting to the police. Ottinger further testified that he later learned that the shooting had not in fact been reported by Bloomstrand. James West was then called as a prosecution witness, and the jury was permitted to hear evidence that on the day after the shooting Bloomstrand discussed the details of the shooting with West, but when West asked Bloomstrand why he had not reported the shooting to police, Bloomstrand gave no answer. It is only the

latter testimony that was presented over objection by the defense. Given these circumstances, we believe that the evidence concerning West's conversation with Bloomstrand cannot properly be characterized as a comment on Bloomstrand's invocation of his constitutional right to remain silent.

Had Bloomstrand not discussed Okboak's shooting with both West and Ottinger, his failure to answer West's question about contacting the police might plausibly be characterized as an exercise of the right to remain silent, which would not have been admissible at trial. However, such is not the case here. Bloomstrand discussed the shooting in detail with Ottinger, and he informed Ottinger that he had already reported the incident to the police. As the state correctly argues, evidence that Bloomstrand did not in fact report the crime and that he could not or would not provide West with an answer as to why he failed to do so is relevant to establish that Bloomstrand made a false exculpatory statement to Ottinger. It is generally established that false exculpatory statements by the accused are admissible as circumstantial evidence of guilt. *See United States v. Rajewski,* 526 F.2d 149, 158 (7th Cir.1975).

■ Moreover, use of Bloomstrand's differing accounts to Ottinger and West was appropriate in order to show omissions and inconsistencies in statements made by Bloomstrand following the shooting. *See Sidney v. State,* 571 P.2d 261, 264 (Alaska 1977). Finally, Bloomstrand's apparent unwillingness to answer West's question about why he had failed to report the shooting to the police would appear to qualify as an adoptive admission by silence, since his failure to answer could be viewed as an acknowledgement that he had not in fact reported the shooting. Thus, evidence of Bloomstrand's silence would have been admissible under the Alaska Rule of Evidence 801(d)(2)(B).[2] *See Doisher v. State,* 632 P.2d 242 (Alaska App.1981). While mere silence in the face of a question such as West's might normally be inadmissible under the rule of *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), characterization of Bloomstrand's failure to respond to West's question as an adoptive admission of silence is appropriate given that West was not an agent of the state conducting an interrogation and, further, that Bloomstrand had openly and willingly discussed details of the shooting with West and told West his version of the incident.

■ We recently had occasion to consider a similar issue in *Weston v. State,* 656 P.2d 1186 (Alaska App.1982). There we held:

Excluding evidence of a defendant's silence is for the purpose of protecting his right not to incriminate himself. "It is

---

2. Evidence Rule 801(d)(2)(B) states:

(d) *Statements Which Are Not Hearsay.* A statement is not hearsay if...

(2) *Admission by Party-Opponent.* The statement is offered against a party and is ... (B) a statement of which he has manifested his adoption or belief in its truth....

The commentary to Evidence Rule 801(d)(2)(B) makes clear the fact that this provision is intended to include adoptive admissions by silence. Thus, the commentary provides (at 223–24):

Under established principles an admission may be made by adopting or acquiescing in the statement of another.... Adoption or acquiescence may be manifested in any appropriate manner. When silence is relied upon, the theory is that the person would, under the circumstances, protest the statement made in his presence, if untrue. *See, e.g., Beavers v. State,* 492 P.2d 88, 96 (Alaska

1971). The decision in each case calls for an evaluation in terms of probable human behavior.... In criminal cases ... troublesome questions have been raised by decisions holding that failure to deny is an admission: the inference is a fairly weak one, to begin with; silence may be motivated by advice of counsel or realization that "anything you say may be used against you"; unusual opportunity is afforded to manufacture evidence; and encroachment upon the privilege against self-incrimination seems inescapably to be involved. However, recent decisions of the Supreme Court relating to custodial interrogation and the right to counsel appear to resolve these difficulties. *See, e.g., Doyle v. Ohio,* 426 U.S. 610 [96 S.Ct. 2240] 49 L.Ed.2d 91 (1976). Hence, the rule contains no special provisions concerning failure to deny in criminal cases.

not excluded so that a defendant may freely and falsely create the impression that he has cooperated with the police when, in fact, he has not."

*Weston v. State,* 656 P.2d at 1190 (quoting *United States v. Fairchild,* 505 F.2d 1378, 1383 (5th Cir.1975)). We think that similar reasoning applies to the present case. Bloomstrand told Ottinger that he had reported the shooting to the police, and he permitted Ottinger to testify to this fact without objection. Given this fact, Bloomstrand cannot properly complain of evidence showing that, when subsequently confronted by West with his *failure* to contact the police, he neither denied the failure nor provided any explanation for it.[3] To exclude such evidence might leave the jury in confusion about whether Bloomstrand had in fact reported the shooting.

 A corollary argument is raised by Bloomstrand with respect to the fact that the state was permitted to bring out the fact that Bloomstrand had refused to take a breathalyzer examination following his arrest. Since the results of a breathalyzer examination are not testimonial in nature, no question as to violation of Bloomstrand's right to remain silent is presented by this issue. However, warrantless seizure of Bloomstrand's breath could arguably have amounted to an impermissible seizure, in

violation of the fourth amendment of the United States Constitution and article 1, Section 14, of the Alaska Constitution. Evidence concerning Bloomstrand's reliance on his constitutional right to be protected against unlawful search and seizures would normally be impermissible. *See Padgett v. State,* 590 P.2d 432, 434 (Alaska 1979); *Bargas v. State,* 489 P.2d 130, 133–34 (Alaska 1971). In the present case, however, we find Bloomstrand's claim to be without merit. We note, initially, that Bloomstrand's counsel made no objection at trial to testimony concerning the failure to agree to a breathalyzer test. Thus, our consideration of this issue is limited to determining whether plain error was committed under Alaska Criminal Rule 47(b). At trial, defense counsel first raised the issue of Bloomstrand's sobriety on the night of the killing by asking an investigating officer, on cross-examination, whether he happened to know what the alcoholic content of Bloomstrand's blood was at the time of arrest and whether any tests for blood alcohol had been conducted at the hospital. Testimony concerning Bloomstrand's refusal to acquiesce to a breathalyzer test was elicited only in response to this line of inquiry by the defense. Under these circumstances, we conclude that no plain error was committed.[4]

---

3. Bloomstrand makes similar assertions about two instances in which the prosecution was permitted to question him on cross-examination about his failure to report the shooting or call an ambulance. However, these two instances of cross-examination were allowed to pass by without objection at trial. Given the relevance of these questions to establish that Bloomstrand had given a false exculpatory story to Eddie Ottinger and the fact that the jury was independently informed, through the testimony of Eddie Ottinger (which was not objected to), of the fact that Bloomstrand had not actually reported the shooting to police, we conclude that the challenged cross-examination does not rise to the level of plain error. Alaska R.Crim.P. 47(b).

 Similar reasoning leads us to the conclusion that evidence of Bloomstrand's failure to answer West's question as to why he did not report the shooting would, even if improperly admitted, constitute harmless error. The jury was independently informed of Bloomstrand's failure to make a report to police by Eddie

Ottinger's testimony, which was admitted without objection. Additionally, the entire line of examination concerning Bloomstrand's admissions to Ottinger and West dealt with his consciousness of guilt following the shooting and was primarily relevant to establish that Bloomstrand had acted intentionally and was therefore guilty of first degree murder. Thus, the jury's verdict acquitting Bloomstrand of first degree murder and finding him guilty only of the lesser-included offense of manslaughter adds further weight to the conclusion that any error with respect to Bloomstrand's silence was harmless.

4. In considering this issue, we assume, without deciding, that a non-consensual breathalyzer test administered to a person upon arrest for an offense that does not involve operating a motor vehicle while intoxicated as an element would constitute a seizure of evidence for constitutional' purposes. We intimate no opinion as to whether the results of a breathalyzer examination do, in fact, constitute a seizure of

## IV. CONSCIOUSNESS OF GUILT INSTRUCTION

■ Bloomstrand additionally asserts that the trial court committed error in submitting a "consciousness of guilt" instruction to the jury over his objection.[5] He argues that the instruction should not have been given because the state failed to demonstrate the proper evidentiary prerequisite, *i.e.*, that he had made false exculpatory statements to West and Ottinger which were inconsistent with his trial testimony. *See People v. Green*, 27 Cal.3d 1, 164 Cal. Rptr. 1, 609 P.2d 468, 491–92 (1980). Upon comparing Bloomstrand's pre-trial statements made to West, Ottinger and the police with his trial testimony, we conclude that portions of the pre-trial statements could fairly be construed as being inconsistent with Bloomstrand's trial testimony. For example, Ottinger testified that Bloomstrand told him that Bloomstrand and Okboak were "messing with the gun" and pointing it at each other, while at trial Bloomstrand did not state that Okboak had pointed the gun at him or that he had pointed the gun at Okboak. It is significant that the challenged instruction did not tell the jury that Bloomstrand had in fact made false or misleading statements; rather, the instruction told the jury to evaluate the evidence for itself and to determine whether inconsistent statements had been made. The jury was, furthermore, instructed that it should determine what weight, if any, to give to inconsistent statements if such statements were found to have been made. Assuming, as we must, that the jury followed this instruction, Bloomstrand's verdict would have been affected only if the jury found that he actually made false or misleading pre-trial statements. Given the

specific nature of this instruction, we conclude that no error was committed. *See United States v. Barresi*, 601 F.2d 193, 194–95 (5th Cir.1979); *United States v. Holbert*, 578 F.2d 128, 130 (5th Cir.1978).

## V. SENTENCING

The final issues raised by Bloomstrand involve his sentencing. Three persons testified at the sentencing hearing that they had been assaulted by Bloomstrand at some time in the past. One of the assaults resulted in a misdemeanor conviction. In addition, the probation department's pre-sentence report listed five prior adult criminal convictions for Bloomstrand in Canada between 1968 and 1972 and three subsequent misdemeanor convictions in Alaska. At least two of the Canadian convictions apparently constituted felonies. Both the probation officer who prepared the pre-sentence report and the prosecutor in the case verified Bloomstrand's Canadian convictions by contacting appropriate Canadian authorities.

The pre-sentence report further indicated that Bloomstrand, age thirty-three at the time of sentencing, began drinking when he was eight years old and started drinking heavily at age sixteen. Bloomstrand did not dispute the fact that he had a long-standing problem with alcohol. In fact, Bloomstrand called two witnesses from a local alcohol program who testified that he had an alcohol problem and that, in their opinion, he would need professional help to effectively deal with this problem. The trial court considered the *Chaney*[6] goals and emphasized the importance of deterrence and reaffirmation of societal norms. Noting Bloomstrand's history of alcohol-re-

---

evidence, nor do we express any view as to whether the implied consent statute would apply to a case such as the present one. *See, e.g., Schmerber v. California*, 384 U.S. 757, 764–65, 86 S.Ct. 1826, 1882–83, 16 L.Ed.2d 908, 916–17 (1966); *Graham v. State*, 633 P.2d 211, 214 (Alaska 1981).

**5.** The challenged instruction stated:

If you find that before this trial the defendant made false or deliberately misleading

statements concerning the charge upon which he is now being tried, you may consider such statements as a circumstance tending to prove a consciousness of guilt, but it is not sufficient of itself to prove guilt. The weight to be given to such a circumstance and its significance, if any, are matters for your determination.

**6.** *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970).

lated violence, the court additionally stressed that the public could best be protected by isolating Bloomstrand. The court recognized the need for alcohol rehabilitation, but felt that a suspended sentence would be inappropriate given Bloomstrand's prior criminal history. A twelve-year sentence was imposed, with the recommendation that Bloomstrand receive alcohol rehabilitation treatment and psychiatric or psychological counseling during his incarceration. The court expressly provided that Bloomstrand be required to serve a minimum of five years before becoming eligible for parole. In imposing this restriction, the court indicated a belief that the five-year minimum was necessary to give the counseling and alcohol rehabilitation which it had recommended a chance to work.

■ Bloomstrand maintains, first, that the trial court improperly relied upon his prior criminal record from Canada because authenticated copies of judgments of conviction were never submitted by the prosecution in accordance with AS 12.55.145(b).[7] We reject this argument. AS 12.55.145(b) applies directly only to prior convictions used for the purpose of establishing the applicability of presumptive sentencing under AS 12.55.125–.185. At no time either prior to or during his sentencing did Bloomstrand object to the court's consideration of his Canadian convictions on the grounds that the state had failed to comply with the statute. Nor has Bloomstrand suggested, either below or on appeal, that he was not in fact convicted of the crimes considered by the court. Under the particular circumstances of this case, we hold that the state was not bound by the provisions of AS 12.55.145(b) and that the evidence of Bloomstrand's Canadian convictions was sufficiently verified to warrant the court's consideration. Even assuming applicability of AS 12.55.145(b) to this case, the fact that Bloomstrand admitted his Canadian convictions to the pre-sentence probation officer,

the fact that he did not expressly object to their use at his sentencing hearing, and the fact that he has never claimed that the record of convictions considered by the court was inaccurate all support the conclusion that any error was harmless.

■ Bloomstrand's second challenge to his sentence is directed toward the restriction of parole eligibility. Bloomstrand argues that the five-year limitation on eligibility for parole is unjustified, because it is within the parole board's discretion to determine when a prisoner is sufficiently rehabilitated to be released. This argument is without merit. The trial court was expressly authorized by AS 33.15.230 to restrict Bloomstrand's eligibility for parole. Inherent in the statutory grant of authority contained in AS 33.15.230 is the legislature's conclusion that the sentencing court should be permitted to make the initial determination as to the minimum amount of time which is necessary for a prisoner to serve before being considered for release on parole. We think it apparent that, among the various factors that a sentencing court can properly consider in determining whether and to what extent eligibility for parole should be restricted under AS 33.15.230 is the amount of time that will reasonably be required to assure the defendant's rehabilitation through programs such as those providing alcohol therapy or psychological counseling. We conclude that the trial court's decision to restrict Bloomstrand's parole was not based upon impermissible considerations.

Bloomstrand's third and final attack on his sentence consists of his argument that the sentence he received is excessive when compared to other manslaughter sentences, especially considering the possibility of his obtaining alcohol treatment and psychological counseling in a non-custodial setting. Bloomstrand urges that an appropriate sentence would be ten years' imprisonment, with five years suspended.

7. At the time of sentencing, AS 12.55.145(b) provided:

(b) when sentence is imposed under this chapter, prior convictions not expressly admitted by the defendant must be proved by authenticated copies of court records served on the defendant or his counsel at least 10 days before the date set for imposition of sentence.

A review of the transcript of the sentencing hearing and of Bloomstrand's extensive criminal record reveals that Bloomstrand is an extremely violent person when he drinks and that he cannot control his drinking. Thus, the trial court's concern for the public was justified. In *State v. Ahwinona*, 635 P.2d 488, 491 n. 3 (Alaska App.1981), we stated:

[W]e believe that when a violent crime is committed under the influence of alcohol by a person with a background of alcohol-related violence, his background should be considered by the court in determining the extent to which rehabilitation will realistically be accomplished by the sentence which it intends to impose.

We believe this comment to be applicable to Bloomstrand's case. Given the serious nature of the offense, Bloomstrand's criminal record, and his alcohol problem, a twelve-year sentence with a minimum of five years in prison cannot be deemed clearly mistaken. *McClain v. State*, 519 P.2d 811, 814 (Alaska 1974).

The conviction and sentence are AFFIRMED.