**Sandra NELSON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–264.**

Court of Appeals of Alaska.

Dec. 7, 1984.

James H. Cannon, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

S. Joshua Berger, Asst. Atty. Gen., Harry L. Davis, Dist. Atty., Fairbanks, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

## OPINION

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

COATS, Judge.

On September 30, 1983, Andrew Blank, a fish and wildlife protection officer, observed a car, driven by Sandra Nelson, traveling 15 to 20 mph in the left hand lane of four-lane Airport Road in Fairbanks. Officer Blank stopped Nelson for impeding traffic. Nelson told the officer she did not have a license, and produced other identification. Officer Blank returned to his car and determined that Nelson's license had been suspended. He then went back to Nelson's car and informed her that he would have to arrest her for driving while her license was suspended. Nelson's mother, Betty Mellot, was also in the car. Officer Blank testified that Nelson was in his custody for thirty to forty minutes. He testified, that she twice told him she was only moving the car a short distance, and that she was having problems with her car. She asked not to be arrested. No *Miranda* warnings were ever given and, apparently, no questioning took place once Nelson was in custody. The officer testified that he noted no signs of alcohol use by Nelson, and that he was under the impression that the vehicle was malfunctioning.

At trial, Nelson relied on the defense of necessity. Betty Mellot testified that on the morning of the incident she had driven her daughter's car from Mellot's residence, where it was normally kept, to her daughter's residence. She picked up Nelson, and they went downtown to pay bills, with Mellot driving. Mellot testified that after paying the bills, while she was driving, she pulled into a parking lot and indicated that because of a severe headache she felt that she should not drive. She asked her daughter to take her home. She testified that she did not have sufficient funds to call an ambulance or a cab.

Nelson testified that she knew her license was suspended, and that she had unsuccessfully attempted to call a friend, Bill Suitor, to drive her mother home. She further testified concerning the mechanical malfunction of her car. She testified she believed at the time of the arrest that it would do her no good to try to further explain her reason for driving to Officer Blank.

Over defense objection, the state was allowed to cross-examine Nelson concerning the fact that she had not mentioned the subject of her mother's migraine headache at the time of the arrest. The state was also permitted to comment on this fact during its opening and closing arguments, and to examine both Trooper Blank and Trooper Malone (who was called to the arrest scene by Blank) concerning Nelson's failure to mention her mother's condition at the time of the arrest.

The state also introduced over objection, certified copies of two recent convictions of Nelson for driving while intoxicated. These convictions led to Nelson's license suspension.

Nelson was found guilty of driving with her driver's license suspended. She now appeals to this court.

### EVIDENCE OF PRIOR CONVICTIONS

Nelson argues that the trial court erred in admitting evidence of her two prior convictions for driving while intoxicated. At the outset of the trial, Nelson offered to stipulate that at the time she was arrested, her license had been validly suspended and that she was aware that she was driving while her operator's license was suspended. She further offered to stipulate that the only issue in the case was whether she had a sufficient defense of necessity. However, the prosecution contended at trial, and maintains on appeal, that the evidence of Nelson's prior convictions was properly admitted to contest the defense of necessity. The trial court admitted the evidence for this purpose.

 The defense of necessity, which is preserved from common law by AS 11.81.-320, is an affirmative defense. AS 11.81.-320(b). The necessity defense is discussed in *Nelson v. State*, 597 P.2d 977, 979 (Alaska 1979):

> The defense of necessity may be raised if the defendant's actions, although violative of the law, were necessary to prevent an even greater harm from occurring.

. . . . .

Commentators generally agree that there are three essential elements to the defense: 1) the act charged must have been done to prevent a significant evil; 2) there must have been no adequate alternative; 3) the harm caused must not have been disproportionate to the harm avoided.

The trial judge admitted the evidence of the past convictions to aid the jury in determining whether the harm caused by Nelson's driving was disproportionate to the harm avoided.

 The fact that Nelson's license had been suspended for driving while intoxicated does not appear to us to have probative value in evaluating Nelson's conduct at the time of her arrest. Regardless of why Nelson's license had originally been suspended, it had been suspended by court order and it should have been clear enough to the jury that Nelson was not to drive unless she prevailed on her defense of necessity. On the other hand, the prejudice of admitting the fact that Nelson had twice been convicted of driving while intoxicated is great. The jury might have been prejudiced against Nelson because she had twice been convicted of serious misdemeanor offenses. *See* E. Cleary, *McCormick on Evidence*, § 190, at 453–54 (2d ed. 1972). We conclude that the trial judge abused his discretion in admitting the evidence of the two prior convictions for driving while intoxicated. Alaska Rule of Evidence 403. We cannot say that the error was harmless, thus Nelson's conviction must be reversed.

## COMMENT ON SILENCE

Nelson contends that the trial judge erred in permitting the state to point out to the jury that at the time she was stopped and during the time she was in custody, Nelson never mentioned anything about having to drive because her mother had a migraine headache. Nelson contends that this argument by the state amounted to an impermissible comment on her right to remain silent. Since we have decided that this case must be reversed, it is not strictly necessary for us to reach Nelson's argument on this point. However, we believe that our comments may help the trial court in the event this case is retried.

In *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that where a defendant had been given *Miranda* warnings, it was a violation of due process for the state to impeach him by showing that he had remained silent and for the state to argue that the defendant's silence was inconsistent with an explanation which he later gave at trial. *Accord, Gunnerud v. State*, 611 P.2d 69, 75 (Alaska 1980). *See also United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975) (accused's silence after receiving *Miranda* warnings so lacked significant probative value and was so prejudicial that use at trial to rebut alibi entitled petitioner to a new trial).

In *Dorman v. State*, 622 P.2d 448, 456–59 (Alaska 1981), the Alaska Supreme Court held that it was plain error for the prosecutor to comment on the accused's post-arrest silence. In that case, the prosecutor had asked the jury to infer guilt from the fact that Dorman, during the eight minutes between the time he was told he was under arrest for murder and the time he was given *Miranda* warnings, did not ask the arresting officer who the murder victim was. The prosecutor argued that this was because Dorman knew who the victim was because Dorman was guilty of the murder.

■ Since the *Dorman* case, the United States Supreme Court has decided *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982). In that case, the United States Supreme Court held that cross-examination concerning post-arrest silence where *Miranda* warnings were *not* given did not violate due process. We note that courts in California and Washington have not followed *Fletcher v. Weir*, holding that under their state constitutions, the use of post-arrest silence at trial is impermissible. *People v. Jacobs*, 158 Cal.App.3d 740, 204 Cal.Rptr. (1984); *State v. Davis*, 38 Wash. App. 600, 686 P.2d 1143 (1984). Although the members of the Alaska Supreme Court have not had the opportunity to reevaluate their position in light of *Fletcher v. Weir*, we have no reason to believe that they would decide the *Dorman* case differently in light of that authority. We, therefore, conclude that under Article 1, § 9 of the Alaska Constitution,[1] a person who is under arrest for a crime cannot normally be impeached by the fact that he was silent following his arrest.[2] The state appears to concede that under Alaska law Nelson could not be impeached by her silence after she was stopped by Trooper Blank.[3] Rath-

---

**1.** Article 1, § 9 of the Alaska Constitution provides in part that, "[n]o person shall be compelled in any criminal proceeding to be a witness against himself."

**2.** *But see Weston v. State*, 656 P.2d 1186 (Alaska App.1982), *reversed on other grounds*, 682 P.2d 1119 (Alaska 1984). In *Weston*, the defendant testified to his willingness to cooperate with police. The trial court allowed the prosecutor to rebut the attempt by the defense to show how cooperative Weston had been with police by cross-examining him about his lack of responsiveness to police questions. *Id.* at 1189–90. The court in *Weston* found that "[t]he cross-examination in this case does not refer to Weston's exercise of his right to remain silent, but rather to inconsistencies between what he told the jury regarding his willingness to cooperate with the police investigation and what he in fact told the police." *Id.* at 1190.

**3.** The state does not argue that Nelson's statements while she was in custody, but before she was under arrest, should be treated differently than statements which she made after she was placed under arrest. We see no reason, under the facts of this case, to draw any distinction between statements which Nelson made while

er, the state argues that Nelson voluntarily made statements about her driving by stating, apparently more than once, that she was only moving the car a short distance, that she was having problems with her car, and in asking not to be arrested. The state argues that her statements at the scene of her arrest constituted an explanation for her behavior, and that these statements were inconsistent with her explanation at trial that it was necessary for her to drive because her mother had developed a migraine headache.

██ It seems clear that there is no constitutional impediment to allowing the prosecution to impeach Nelson with statements which she made at the time of her arrest if those statements were inconsistent with statements which she made at trial. The law in this area is set out in *Sidney v. State,* 571 P.2d 261, 263–64 (Alaska 1977). Sidney was arrested on a murder charge and made a statement to the police where he described his version of the incident. When a police officer brought in a tape recorder to record Sidney's statement, Sidney asked for an attorney and all further questioning ceased. At trial, Sidney testified, and the state called police officers to testify, that when he made his original statement at the police station, Sidney did not tell the police some of the facts that he testified to at trial. The prosecutor also commented, in argument, on Sidney's failure to tell the police all of the matters that Sidney testified to at the trial. The Alaska Supreme Court stated:

> If what the state did here amounted to evidence or commentary on silence on the part of the accused, or on an assertion by him of fifth or sixth amendment rights, there is no question that it would be error.... But this is not the problem presented. In the case at bar the defendant did not remain silent. He purported to give a rather complete statement of what had occurred. Omissions and inconsistencies in his exculpatory state-

ment could properly be pointed out at trial.... We read *Doyle v. Ohio, supra,* as not changing that rule. Accordingly, there was no error in the admission of that evidence or in the prosecutor's comments on it. [Citations omitted.]

*Id.* at 264. *See also Anderson v. Charles,* 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980).

██ Nelson's case, however, does not appear to be as straightforward as Sidney's. In *Sidney,* the defendant gave what the supreme court characterized as, "a rather complete statement of what had occurred." In Nelson's case, it is not as clear that she was giving a full explanation of why she was driving. However, we believe that this presents a question whether the evidence is relevant and whether the probative value of the evidence outweighs the prejudicial effect. A.R.E. 401 and 403. This is a matter for the exercise of discretion by the trial court. The trial court must first determine whether the statements which Nelson made were inconsistent with her later testimony. In weighing this and in balancing the prejudicial effect of the evidence and the probative value, the court should consider, among other things, that Nelson did have a right to remain silent and may have been exercising that right. In the event the trial court determines that the evidence of Nelson's statements at the time she was stopped are admissible as prior inconsistent statements, Nelson would be entitled to a cautionary instruction concerning her right to remain silent.

The conviction is REVERSED.

---

she was in custody but before she was actually under arrest and statements which she made while she was under arrest.