**Miller Z. WESTON, Petitioner,**

v.

**STATE of Alaska, Respondent.**

**No. 5734.**

Supreme Court of Alaska.

May 18, 1984.

Christine Schleuss, Asst. Public Defender, Anchorage, W. Grant Callow, II, Asst. Public Defender, Anchorage, Dana Fabe, Public Defender, Anchorage, for petitioner.

Charles M. Merriner, Asst. Atty. Gen., Anchorage, Norman C. Gorsuch, Atty. Gen., Juneau, for respondent.

Before BURKE, C.J., and RABINOW-ITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

This petition for hearing concerns the question of whether Miller Weston was improperly denied an instruction on self-defense as justification to the murder charge for which he was convicted. The court of appeals upheld Weston's conviction, ruling that any error was harmless. We reverse and order a new trial.

### I. THE FACTS

On June 9, 1980, Miller Weston killed Donald Ahsoak in Barrow, Alaska. Weston is 5'7" tall, weighed approximately 150 pounds, and was 26 years old at the time of the killing. Ahsoak was 60 years old and approximately the same height and weight as Weston.

Weston first met Ahsoak on the day of the killing, when they, along with several other men, spent the afternoon on the beach in Barrow drinking whiskey. At about 6:00 p.m. Ahsoak invited Weston and another man to his home, where they continued drinking. When the other man left, nothing unusual had happened. There were no third party witnesses to the homicide.

Weston testified that at about 9:30 p.m. Ahsoak left the house for about ten minutes. Upon Ahsoak's return, Weston prepared to leave, but Ahsoak shouted "Wait a minute" and demanded money. Weston, who had already contributed twenty dollars for liquor, denied knowing what Ahsoak was talking about. Ahsoak responded, "Come on, you Yupik thief, where's my money?" and charged at Weston with a knife.

In the struggle that followed, Weston managed to shake loose the knife. The struggle continued, but eventually Ahsoak lost his balance and fell to the floor. Weston got on top of Ahsoak, grabbed the knife, and said that he was going to kill Ahsoak. Ahsoak said "Don't, don't Miller," but Weston cut his throat, killing him. Weston turned himself in to the police later that evening after consulting with a friend.

Weston was convicted in a jury trial of first degree murder for the killing of Ahsoak. Judge Jay Hodges denied the defense request for an instruction on self-defense. However, the trial court did give the jury an instruction on imperfect self-defense.

The court of appeals upheld Weston's conviction, but did not reach the issue of whether the evidence was sufficient to require instructing the jury on self-defense. *Weston v. State,* 656 P.2d 1186, 1189 (Alaska App.1982). The court of appeals held that even if an instruction on self-defense was needed, the failure to give one was harmless error because the jury had been instructed as to imperfect self-defense and had rejected that theory in convicting Weston of murder. *Id.* at 1188–89.

## II. SELF–DEFENSE

Self-defense will justify the use of deadly force if the defender reasonably believes that the use of deadly force is necessary to defend himself from death or serious physical injury. AS 11.81.335.[1] Thus, to employ self-defense a defendant must satisfy both an objective and subjective standard; he must have actually believed deadly force was necessary to protect himself, and his belief must be one that a reasonable person would have held under the circumstances.

■ A court is obliged to instruct the jury on self-defense only when the record contains "some evidence ... which places in issue the defense...." AS 11.81.- 900(b)(15)(A);[2] *see also Bangs v. State,* 608 P.2d 1, 5 (Alaska 1980); *Toomey v. State,* 581 P.2d 1124, 1126 n. 6 (Alaska 1978).

Under this "some evidence" standard, a self-defense instruction must be given if there is evidence from which a reasonable juror could entertain a reasonable doubt as to the defendant's guilt. *See LaLonde v. State,* 614 P.2d 808, 810 (Alaska 1980) ("In accordance with our decision in *Christie v. State,* 580 P.2d 310, 313–16 (Alaska 1978), involving a defense request for an insanity instruction, we find that a 'heat of passion' instruction would have been proper only if LaLonde had produced 'some evidence' that she had acted because of extreme provocation, i.e., if there had been evidence in light of which a reasonable juror could have entertained a reasonable doubt with respect to LaLonde's malice.") (footnote omitted); *see also Paul v. State,* 655 P.2d 772, 775 (Alaska App.1982); *Folger v. State,* 648 P.2d 111, 113 (Alaska App.1982). In making this determination, the evidence should be viewed in the light most favorable to the defendant, *Bangs,* 608 P.2d at 5; *Paul,* 655 P.2d at 775, without questioning his credibility, *Toomey,* 581 P.2d at 1126 n. 6.

### A. The Objective Standard

■ The issue here is whether Weston made a sufficient showing to raise a jury question as to whether a reasonable person would have acted in self-defense under the circumstances. We emphasize that the question is not whether Weston was in actuality mistaken in this belief. As Justice Holmes stated in *Brown v. United States,* 256 U.S. 335, 343, 41 S.Ct. 501, 502, 65 L.Ed. 961, 963 (1921), "[d]etached reflec-

---

1. AS 11.81.335 provides:
 (a) Except as provided in (b) of this section, a person may use deadly force upon another person when and to the extent
 (1) the use of nondeadly force is justified under AS 11.81.330; and
 (2) the person reasonably believes the use of deadly force is necessary for self defense against death, serious physical injury, kidnapping, sexual assault in the first degree under AS 11.41.410(a)(1) or (2), sexual assault in the second degree, or robbery in any degree.
 (b) A person may not use deadly force under this section if the person knows that, with complete personal safety and with complete safety as to others, the person can avoid the

necessity of using deadly force by retreating, except there is no duty to retreat if the person is
 (1) on premises which the person owns or leases and the person is not the initial aggressor; or
 (2) a peace officer acting within the scope and authority of the officer's employment or a person assisting a peace officer under AS 11.- 81.380.

2. AS 11.81.900(b)(15)(A) provides:
 (15) "defense", other than an affirmative defense, means that
 (A) some evidence must be submitted which places in issue the defense;

tion cannot be demanded in the presence of an uplifted knife." We conclude Weston did produce "some evidence" that a reasonable person might have used deadly force under the circumstances.

The evidence, viewed in the light most favorable to Weston, shows that Ahsoak had made an unprovoked attack on Weston with a knife immediately prior to the killing. Further, Ahsoak had several guns and knives close at hand with which to continue his attack [3] and was intoxicated to the point of irrationality.[4] Under these circumstances, a jury could have concluded that at least a reasonable doubt existed that the danger to Weston had not ceased and thus that he acted reasonably in self-defense.

### B. The Subjective Standard

We also conclude that Weston made a sufficient showing that he actually believed self-defense was necessary to avoid death or serious injury. First, evidence that a reasonable person might have believed in the necessity of using deadly force also provides circumstantial evidence that Weston held such a belief. The State argues, however, that Weston's testimony establishes that he acted out of anger, rather than fear. We do not believe Weston's testimony leads ineluctably to this conclusion.

Weston did testify that he was angry when he killed Ahsoak and that, "[m]y force and anger killed Mr. Ahsoak." However, Weston also testified that he killed Ahsoak "[b]ecause I was afraid ...." Further, he stated that during the struggle he was scared because he thought that

Ahsoak was going to kill him, and that he was still scared even after the knife was dislodged from Ahsoak's hand. Thus, some of what Weston said would support a conclusion that Weston acted out of fear, while other parts of his testimony tend to contradict such a conclusion. Since the "some evidence" rule requires crediting testimony which is favorable to the defense and discrediting that which is unfavorable, we find that Weston provided some evidence that he actually believed his conduct was necessary to insure his own safety. Consequently, the trial court erred in not instructing the jury on self-defense as justification for the killing.

### III. HARMLESS ERROR

The court of appeals concluded that even if the trial court had committed error by not instructing the jury on self-defense, the error was harmless since the jury rejected the affirmative defense of imperfect self-defense. We disagree.

An error can be considered harmless in this context if the verdict necessarily shows that the jury would have rejected the defense contained in a requested instruction had the instruction been given. *See Christie v. State*, 580 P.2d 310, 320 (Alaska 1978). The jury, by rejecting imperfect self-defense, concluded that Weston had not proved by a preponderance of the evidence that he actually believed that he was acting in self-defense. The burden of establishing imperfect self-defense rests on the defendant, and the standard of proof is a preponderance of the evidence.[5] In contrast, the burden of disproving self-defense rests on the State and the standard of

---

**3.** A shotgun and rifle were leaning against the wall in the living room at almost the exact location at which the struggle began. A loaded pistol was on a shelf, and knives lay on the kitchen counter top in plain view. While Weston did not testify to knowledge of these weapons, a jury could easily infer such knowledge from the fact that Weston had been in the home drinking for more than three hours prior to the killing.

**4.** Ahsoak's blood alcohol level was .269 percent at the time of his death. A pathologist indicated

that this level of alcohol was sufficient to cause irrational acts.

**5.** Imperfect self-defense, at the time of the killing, was an affirmative defense which would reduce the crime of murder to voluntary manslaughter. This affirmative defense essentially consisted of the same elements as the justification of self-defense, however the defendant need not show that a reasonable person would have acted as he did. Imperfect self-defense has since been repealed by ch. 102, §§ 44–45, SLA 1980.

proof is beyond a reasonable doubt.[6] The jury's verdict shows that it found that the evidence either was evenly balanced or preponderated in favor of the state on the issue of actual belief; it does not show, however, that the jury found beyond a reasonable doubt that Weston did not hold such a belief. Thus, the trial court's error was not harmless.

For the reasons stated above, we REVERSE the conviction of Miller Weston for first degree murder and REMAND for a new trial.

COMPTON, J., dissents.

COMPTON, Justice, dissenting.

I dissent. There is no evidence from which a reasonable juror could have entertained a reasonable doubt whether Weston acted in self-defense, or whether he would have been justified in doing so.

The court cites Weston's statements that he was scared when Ahsoak came at him with a knife and that he was still scared after he had disarmed Ahsoak and they continued to struggle, as evidence that Weston acted out of fear for his own safety when he slit Ahsoak's throat. *Weston v. State,* 682 P.2d 1119, 1122 (Alaska 1984).[1] However, there is simply no evidence that Weston acted out of fear; his own testimony precludes that interpretation of the evidence. In response to questions from his counsel about the course of events once Ahsoak had fallen and Weston had pinned him to the floor, Weston testified:

Q When you got on top of him what were you feeling?

A I was still angry.

Q How angry were you?

A Very angry.

Q What happened?

. . . .

Q At that point I told him I was gonna kill him.

. . . .

Q Why were you going to kill him?

A I was angry. I was really angry at that time.

Q Why—why were you—why were you angry?

A Becuase he called me a Yupik thief. I was also—he was also coming—coming at me with a knife.

Q That had made you angry?

A Yes.

The court states that Weston's testimony is contradictory, *Weston,* 682 P.2d at 1122, but in truth, it is quite consistent. He acknowledged feeling fear on Ahsoak's attack, but once he had gained the upper hand, he no longer felt fear, but anger.

Q When you told him that you were going to kill him, Miller, did you mean it?

A No, I did not.

Q Did you—what do you mean by that?

A My force and anger killed Mr. Ahsoak. But back in my mind, my mind said don't.

. . . .

Q Did you try not to do it?

A Yes. But it was my anger.

In addition, there is no evidence that, had Weston actually believed slitting Ahsoak's throat was necessary, such a belief would have been reasonable under the circumstances. Under Alaska law a person has a duty to retreat, if he may do so in complete safety, before using deadly force in self-defense. AS 11.81.335(b). The evidence fails to show why Weston could not have retreated when Ahsoak fell to the floor.

The presence of other weapons in Ahsoak's house may have had a bearing on

---

**6.** After the defendant has introduced some evidence which places self-defense at issue, AS 11.81.900(b)(15)(B) provides, "the state then has the burden of disproving the existence of the defense beyond a reasonable doubt. . . ."

**1.** Weston's testimony that he killed Ahsoak because he "was afraid" is appended. His testimony that he was "still scared" after his knife was dislodged, read in context, discloses that he and Ahsoak were struggling when he was "still scared." This was *before* Ahsoak fell to the floor and Weston pinned him down.

Weston's ability to retreat in safety, but there is no evidence that Weston was aware of the presence of these other weapons. A basic tenet of the doctrine of self-defense is that "One who invokes the privilege of self-defense is neither limited by, nor entitled to the benefit of, unknown factors." R. Perkins, *Criminal Law* 994 (2d ed. 1969). The court believes a jury could infer that Weston knew of the weapons' presence because he had been in the house drinking for several hours. *Weston,* 682 P.2d at 1122 n. 3. That inference seems extremely tenuous support for a finding, which this court must impliedly have made, that retreat in safety was not possible.

Further, even if Weston could not have retreated in safety, he was still required to use only the force necessary under the circumstances. Another basic tenet of the doctrine of self-defense is that "Deadly force is unreasonable, if non-deadly force is obviously sufficient to avert the threatened harm ...." R. Perkins, *supra,* at 993.

While, as the court notes, the law does not require detached reflection in the presence of an uplifted knife, *Weston,* 682 P.2d at 1121–1122, some consideration of the options available to a victim must be required. This is especially true once the victim is no longer faced with the immediate threat of death, but has gained the advantage in a struggle. Weston had the knife; he could have used it to threaten Ahsoak while he (Weston) took possession of one of Ahsoak's fire-arms. He could have grabbed Ahsoak by the collar and hauled him *across the street* to the police station. There is no evidence that any less drastic alternatives would have been ineffective, and all would have been infinitely more reasonable than slitting Ahsoak's throat three times, while Ahsoak lay pinned beneath Weston, begging for his life.

I would hold that the trial court's failure to instruct the jury on self-defense was not error.

## APPENDIX

MS GREENE: Call Miller Weston.

THE COURT: Mr. Weston, if you'd be kind enough to come forward to the witness chair, attach the microphone with a clip and remain standing while the clerk administers an oath.

THE COURT: Raise your right hand. Thank you.

## MILLER WESTON

called as a witness on his own behalf testified as follows on

### DIRECT EXAMINATION

(Oath administered)

A I do.

THE COURT: Be seated please.

State your name and spell your last name.

A Miller Z. Weston, W-e-s-t-o-n.

THE COURT: Thank you. Ms Greene?

MS GREENE: Thank you.

BY MS. GREENE:

Q Mr. Weston, on the 9th of June, 1980 did you kill Donald Ahsoak?

A Yes, I did.

Q Why did you kill him?

A Because I was afraid; he was coming at me with a knife. He was also calling me Yupik thief.

Q Miller, are you—where are you originally from?

A I'm originally from Nunivak Island.

Q Where is that located?