**Douglas A. CARSON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–1608.**

Court of Appeals of Alaska.

April 24, 1987.

the maximum extent permitted by law during Toovak's incarceration.

Kevin F. McCoy, Asst. Public Defender, Kenai, and Dana Fabe, Public Defender, Anchorage, for appellant.

Nathan A. Callahan, Asst. Dist. Atty., Thomas M. Wardell, Dist. Atty., Kenai, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Douglas A. Carson was convicted, following a jury trial, of one count of resisting arrest, in violation of AS 11.56.700. Carson appeals, contending that the trial court erred in giving incomplete jury instructions on the circumstances in which deadly force is permitted in making an arrest. Carson also argues that the court erred in allowing the prosecution to show the jury a videotape of Carson and in failing to allow the defense to review the personnel records of Carson's arresting officer. We affirm.

Carson's initial contention is that the trial court erred in failing to instruct the jury on the circumstances in which a police officer may use deadly force to effect an arrest. At trial, Carson defended against his resisting arrest charge by contending that the officers who arrested him used excessive force. Under AS 11.81.400, force may be used to resist an arrest that is made by a peace officer only when the officer has used excessive force:

*Justification: Use of force in resisting or interfering with arrest.* (a) A person may not use force to resist personal arrest or interfere with the arrest of another by a peace officer who is known by the person, or reasonably appears, to be a peace officer, whether the arrest is lawful or unlawful, unless

(1) the force used by the peace officer exceeds that allowed under AS 11.81.370.

(b) The use of force justified under this section in resisting arrest or interfering with the arrest of another may not

exceed the use of force justified under AS 11.81.330 or 11.81.335.[1]

As indicated in this provision, the amount of force a peace officer may use in making an arrest is governed by AS 11.81.370; this statute provides that nondeadly force may be used and deadly force may be threatened to make an arrest in any situation where the officer reasonably believes it to be necessary; the actual use of deadly force, however, is restricted to a narrow range of situations:

*Justification: Use of force by a peace officer in making an arrest or terminating an escape.* (a) In addition to using force justified under other sections of this chapter, a peace officer may use nondeadly force and may threaten to use deadly force when and to the extent the officer reasonably believes it necessary to make an arrest, to terminate an escape or attempted escape from custody, or to make a lawful stop. The officer may use deadly force only when and to the extent the officer reasonably believes the use of deadly force is necessary to make the arrest or terminate the escape or attempted escape from custody of a person the officer reasonably believes

(1) has committed or attempted to commit a felony which involved the use of force against a person;

(2) has escaped or is attempting to escape from custody while in possession of a firearm on or about the person; or

(3) may otherwise endanger life or inflict serious physical injury unless arrested without delay.

(b) The use of force in making an arrest or stop is not justified under this section unless the peace officer reasonably believes the arrest or stop is lawful.

(c) Nothing in this section prohibits or restricts a peace officer in preparing to use or threatening to use a dangerous instrument.[2]

1. AS 11.81.330 and 11.81.335, referred to in subsection (b) of this provision, delineate the circumstances under which nondeadly and deadly force may be ordinarily used in self-defense. Thus, when a person is authorized under subsection (a) to use force to resist an arrest, the permissible amount of force is restricted under subsection (b) to the amount of force that would ordinarily be allowed in self-defense. AS 11.81.-330 provides:

*Justification: Use of nondeadly force in defense of self.* (a) A person may use nondeadly force upon another when and to the extent the person reasonably believes it is necessary for self defense against what the person reasonably believes to be the use of unlawful force by the other, unless

(1) the force involved was the product of mutual combat not authorized by law;

(2) the person claiming the defense of justification provoked the other's conduct with intent to cause physical injury to the other; or

(3) the person claiming the defense of justification was the initial aggressor.

(b) In circumstances described in (a)(1)–(3) of this section, the person claiming the defense of justification may use nondeadly force if that person has withdrawn from the encounter and effectively communicated the withdrawal to the other person, but the other person persists in continuing the incident by the use of unlawful force.

AS 11.81.335 provides:

*Justification: Use of deadly force in defense of self.* (a) Except as provided in (b) of this section, a person may use deadly force upon another person when and to the extent

(1) the use of nondeadly force is justified under AS 11.81.330; and

(2) the person reasonably believes the use of deadly force is necessary for self defense against death, serious physical injury, kidnapping, sexual assault in the first degree under AS 11.41.410(a)(1) or (2), sexual assault in the second degree, or robbery in any degree.

(b) A person may not use deadly force under this section if the person knows that, with complete personal safety and with complete safety to others, the person can avoid the necessity of using deadly force by retreating, except there is no duty to retreat if the person is

(1) on premises which the person owns or leases and the person is not the initial aggressor; or

(2) a peace officer acting within the scope and authority of the officer's employment or a person assisting a peace officer under AS 11.-81.380.

2. Definitions for the terms "deadly force," "force," and "nondeadly force" are, in turn, set out in AS 11.81.900(b):

(12) "deadly force" means force which the person uses with intent of causing, or uses under circumstances which he knows create a substantial risk of causing, death or serious physical injury; "deadly force" includes intentionally discharging or pointing a firearm in the direction of another person or in the direction in which another person is believed to be and intentionally placing another person in fear of imminent serious physical injury by means of a dangerous instrument;

At trial, District Court Judge James C. Hornaday gave the jury an instruction on use of force to resist an arrest that was compatible with the substance of AS 11.81.-400.[3] In support of his defense, Carson requested an additional instruction on the circumstances in which AS 11.81.370 permits an officer to use both deadly and nondeadly force. Carson theorized that there was sufficient evidence to support both a finding that his arresting officers unnecessarily used nondeadly force and a finding that they impermissibly used deadly force. Judge Hornaday declined to instruct fully on AS 11.81.370. Apparently based on the conclusion that insufficient evidence of deadly force had been presented, the judge instructed only on the portion of this statute dealing with the use of nondeadly force and the threat of deadly force. The court's instruction provided:

A peace officer may use nondeadly force and may threaten to use deadly force when [and] to the extent he reasonably believes it necessary to make an arrest.

The use of force in making an arrest is not justified unless the peace officer reasonably believes the arrest is lawful.

Carson contends that the trial court erred in refusing to instruct the jury on the portion of AS 11.81.370 dealing with the permissible use of deadly force by arresting officers.

Resolution of this issue necessarily turns on whether sufficient evidence of deadly force was presented to warrant submission of the question to the jury. It is undisputed that Carson was arrested for a misdemeanor under circumstances that would not justify the actual use of deadly force by his arresting officers. Thus, if the arresting officers were found to have used deadly force, that force would have been *per se* excessive. Accordingly, we must determine whether Carson produced "some evidence" of deadly force.

 The burden of producing "some evidence" is not a heavy one. The question is whether the evidence, when viewed in the light most favorable to the accused, would permit a rational fact-finder to conclude that a reasonable doubt had been established as to the existence of the defense. Once "some evidence" is presented, the accused is entitled to an instruction on the defense, and the state bears the burden of disproving the defense beyond a reasonable doubt. AS 11.81.900(b)(15). Even weak and implausible claims must be submitted to the jury. *Brown v. Anchorage,* 680 P.2d 100, 103 (Alaska App.1984). *See also LaPierre v. State,* 734 P.2d 997 (Alaska App.1987); *Paul v. State,* 655 P.2d 772, 778 (Alaska App.1982); *Folger v. State,* 648 P.2d 111, 113 (Alaska App.1982).

The evidence at trial was sharply disputed. Carson's own testimony provides the most favorable account of his arrest and is the only version we need consider. According to this version, Carson was riding in the back seat of a car that was stopped by Homer Police Officer Andrew Klamser on suspicion of drunken driving after a high speed chase. After the car was stopped, Carson got out and walked in the direction of Klamser's patrol car. Apparently believing that Carson was the driver, Klamser, still in the patrol car, ordered Carson to stop and told him he was under arrest for eluding a police officer.

Carson tried to tell Klamser that he had not been driving, but Klamser got out of

---

. . . .
(22) "force" means any bodily impact, restraint, or confinement or the threat of imminent bodily impact, restraint, or confinement, "force" includes deadly and nondeadly force;

. . . .
(32) "nondeadly force" means force other than deadly force.

**3.** With respect to permissible use of force to resist an arrest, the court instructed:

A person may not use force to resist the arrest of himself by a peace officer who is known to him or reasonably appears to be a police officer, whether the arrest is lawful or unlawful, unless the force used by the police officer exceeds that allowed by law.

The use of force justified in resisting arrest may not exceed the use of force justified in defense of self.

Therefore, unless the state has proved beyond a reasonable doubt that the defendant did not act in these circumstances, you shall find the defendant not guilty.

his car, holding a nightstick. Carson told Klamser there was no need for the nightstick. Klamser ordered Carson to place his hands on top of the car and spread his legs. Carson, afraid that Klamser might hit him with the nightstick, started backing up. He went only a few steps before he was forced to stop by a car that was parked behind him. Klamser continued to approach, holding the nightstick up in front of himself, and waving it in a menacing manner. Carson reached out and placed his hand on the nightstick, to prevent Klamser from hitting him.

After a momentary scuffle, Carson managed to break away from Klamser; Klamser again approached Carson, holding the nightstick in a threatening manner. As Carson grasped the nightstick a second time, Klamser kicked him in the groin. Carson collapsed to the ground but continued to hold onto the nightstick.

By that time, another officer had arrived at the scene; he released a police dog to help subdue Carson. The dog began biting Carson on the lower leg. As Carson tried to avoid being bitten, he was pushed from behind by an officer and knocked to the ground. Once Carson was down, Klamser hit him on the head, but not with the nightstick. The dog continued to bite, moving its grip from Carson's lower leg to his buttock. The second officer told Carson that the dog would stop biting when Carson stopped moving. Carson lay still and the dog let go. The entire encounter lasted for only a minute to a minute and a half.

Carson contends that Klamser's use of the nightstick could have been construed by the jury to constitute deadly force. He reasons that the trial court's failure to instruct on the portion of AS 11.81.370 dealing with deadly force precluded him from arguing that the amount of force used by Klamser was excessive as a matter of law.

■ Even viewing Carson's testimony in its most favorable light, however, we are unable to conclude that it would amount to "some evidence" that Klamser used deadly

force. Although deadly force is defined for most purposes to include both the actual use of deadly force and the threatened use of deadly force,[4] AS 11.81.370(a) and (c) expressly authorize peace officers to threaten the use of deadly force in effecting a misdemeanor arrest. Legislative commentary dealing with this provision makes it clear that the drafters specifically intended to empower police officers to threaten deadly force, even though they realized that the definition of deadly force was sufficiently broad to include both actual and threatened use of deadly force. Alaska Statute 11.81.370 is discussed in the legislative commentary to AS 11.81.-900(b)(12), which sets out the statutory definition of "deadly force." The commentary states:

> During the legislature's consideration of the justifiable use of force, the issue whether deadly force could be *threatened* in situations when its actual use would be improper was frequently discussed. Because of the possibility that such threats could tragically escalate a conflict, the legislature concluded that only peace officers making an arrest should have the authority to threaten deadly force in situations where the actual use of deadly force was not justified. *See* AS 11.81.370.

> While making this specific change in AS 11.81.370, no corresponding change was made in the definition of "deadly force." While it can be argued that because of the express inclusion in AS 11.-81.370 of the phrase "a peace officer may *use nondeadly force and may threaten to use deadly force*," nondeadly force does not include a threat of deadly force, the definition of deadly force appears to provide otherwise. This amendment [the amendment to AS 11.81.900(b)(12) being discussed in the commentary] provides that pointing a firearm in the direction of another person as well as intentionally placing another person in fear of imminent serious physical injury by means of

---

**4.** The definitions of "deadly force," and "nondeadly force," as set out in AS 11.81.900(b), are

quoted in footnote 2, *supra.*

a dangerous instrument constitutes deadly force.

Commentary and Sectional Analysis for the 1980 Amendments to Alaska's Revised Criminal Code, Senate Journal Supp. No. 44 at 20, 1980 Senate Journal 1436.

Hence, it is apparent that Klamser's conduct would not have been prohibited as an impermissible use of deadly force unless it involved the actual use, as opposed to the threatened use, of such force.

In the present case, the evidence establishes, at best, that Klamser threatened Carson with the nightstick. Carson stated that Klamser never struck him with the nightstick. He consistently characterized Klamser's conduct with the stick as menacing, and he never intimated that Klamser actually attempted to strike him. Based on our review of the record, we are satisfied that reasonable fact-finders could not conclude that Klamser committed any act with the nightstick amounting to an actual—as opposed to a threatened—use of deadly force. It follows that there was insufficient evidence that Klamser's threats with the nightstick amounted to a prohibited use of "deadly force" under AS 11.81.370.

 Carson further contends that the jury might have found that deadly force was used when Klamser kicked Carson in the groin and when another officer ordered his police dog to attack Carson. Under AS 11.81.900(b)(12), "deadly force" includes any force used under circumstances that "create a substantial risk of causing death or serious physical injury."[5] Although we can certainly conceive of cases in which specific testimony describing a kick to the groin or an attack by a dog would support the inference that a substantial risk of death or serious physical injury was created, we are unwilling to conclude that testimony establishing no more than the unadorned fact of a kick to the groin or an

attack by a police dog is *per se* sufficient to create a jury question as to the use of deadly force. The issue is not one to be resolved in the abstract. There must, at a minimum, be some particularized evidence from which a reasonable juror could conclude that a substantial risk of serious physical injury was actually created in the specific case at bar.

The issue is analogous to one we considered in *Wettanen v. State*, 656 P.2d 1213 (Alaska App.1983). There, we held that, while any object, including an unshod foot, that was capable of inflicting serious physical injury might qualify under the broad statutory definition of "dangerous instrument," the actual determination of whether a dangerous instrument was used must be made on a case-by-case basis, based on the totality of the circumstances surrounding the actual use of the object in question. *Id.* at 1218.

 We find nothing in the testimony presented at trial to support an inference that a substantial risk of serious physical injury arose from the kick delivered by Klamser or from the bites inflicted by the police dog. Serious physical injury is defined, in relevant part, to include:

(A) physical injury caused by an act performed under circumstances that create a substantial risk of death; or

(B) physical injury that causes serious and protracted disfigurement, protracted impairment of health, protracted loss or impairment of the function of a body member or organ, or that unlawfully terminates a pregnancy.

AS 11.81.900(b)(50). Viewing the evidence in the light most favorable to the defense, we do not believe a reasonable juror could find a reasonable possibility that Carson was actually exposed to substantial risks of injuries of this magnitude.

---

**5.** *See* AS 11.81.900(b)(12), quoted in full in footnote 2, *supra*. This section also provides that "'deadly force' includes intentionally discharging or pointing a firearm in the direction of another person or in the direction in which another person is believed to be and intentionally placing another person in fear of imminent serious physical injury by means of a dangerous instrument." As we have previously noted, however, a police officer is expressly privileged under AS 11.81.370 to threaten deadly force in making a misdemeanor arrest, even though such a threat would ordinarily be included in the definition of "deadly force" set out in AS 11.81.900(b)(12).

Because we find that the evidence presented at trial was insufficient to raise a jury question as to the actual use of deadly force by the police, we hold that the trial court did not err in refusing to instruct the jury on the portion of AS 11.81.370 covering the use of deadly force by peace officers.[6]

■ Carson next claims that the trial court erred in admitting a videotape of Carson that was made at the Homer Police Station. The tape was apparently made because Carson was originally arrested on suspicion of drunken driving. It was offered by the prosecution on rebuttal to establish that Carson was under the influence of intoxicating liquor at the time of his arrest. This issue first arose at trial in the course of Carson's testimony, when Carson admitted having consumed liquor but denied being influenced thereby.

Because the issue of Carson's intoxication was not part of the prosecution's case-in-chief and was first raised during Carson's own testimony, we hold that the trial court did not abuse its discretion in allowing the videotape to be offered on rebuttal. *See* Alaska R.Crim.P. 27(a)(3); *Gafford v. State*, 440 P.2d 405 (Alaska 1968), *cert. denied*, 393 U.S. 1120, 89 S.Ct. 996, 22 L.Ed.2d 125 (1969). Having reviewed the videotape, we further conclude that the trial court was not clearly erroneous in finding that its probative value would outweigh its potential for prejudice. *See* A.R.E. 403.

■ Finally, Carson argues that the trial court erred in refusing to order disclosure to the defense of Klamser's personnel records. The court instead subjected the records to an *in camera* inspection; it then revealed what it considered to be discoverable and sealed copies of the records for appellate review. At no time has Carson advanced any particular reason to support the conclusion that the undisclosed portion of Klamser's personnel record might contain any potentially relevant evidence or information. We are unable to make an independent examination of the undisclosed materials, because Carson has not designated them as part of the appellate record. Under the circumstances, we find no abuse of discretion in the trial court's handling of the matter. *Compare Dana v. State*, 623 P.2d 348 (Alaska App.1981) *with Braham v. State*, 571 P.2d 631 (Alaska 1977), *cert. denied*, 436 U.S. 910, 98 S.Ct. 2246, 56 L.Ed.2d 410 (1978).

The conviction is AFFIRMED.

---

6. Carson has also challenged the trial court's failure to give ancillary instructions concerning the use of force issue. He argues that the court should have given instructions on the statutory definitions of "deadly force," "force," "nondeadly force," "deadly weapon," and "serious physical injury." Since the need for instructions defining these terms hinged on Carson's right to an instruction on the permissible use of deadly force by a peace officer under AS 11.81.370, we do not separately address Carson's claim of error with respect to these instructions.

Carson further maintains that the trial court erred in failing to instruct the jury on the circumstances in which deadly and nondeadly force may be used in self-defense, as set out in AS 11.81.330 and .335 (quoted *supra*, footnote 1). We find no error. The trial court instructed the jury that, if Carson was justified in using force to resist his arrest, the amount of force he used could not exceed the force that would be justified in self-defense. This instruction comports with AS 11.81.400(b). The jury was further told that Carson could resist arrest only to the extent that he reasonably believed such resistance was necessary to protect himself from the excessive use of force by the police. In substance, these instructions incorporated the statutory provisions governing the use of nondeadly force in self-defense. *See* AS 11.81.330. All of the evidence in this case suggested that the force used by Carson in resisting arrest was relatively slight, and certainly fell far short of amounting to deadly force. The prosecution never intimated that, while Carson might have been justified in using some force to resist, he unnecessarily used deadly force. The prosecution's theory was that Carson was never entitled to resist at all, because the arresting officers did not use excessive force. Under these circumstances, we find no reasonable possibility that the jury could have been confused or misled by the trial court's refusal to instruct on the circumstances in which deadly force may be used in self-defense, as set forth in AS 11.81.335.