**Maureen Alice MALLOY, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–9011.

Court of Appeals of Alaska.

March 2, 2007.

Dan S. Bair, Assistant Public Advocate, and Chad W. Holt, Supervising Assistant Public Advocate, Anchorage, for the Appellant.

Timothy W. Terrell, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and David W. Márquez, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

In this appeal, we are asked to revisit an issue that was decided by the Alaska Supreme Court in *State v. Malloy*, 46 P.3d 949 (Alaska 2002) (an earlier stage of this same case). Under AS 12.55.125(a)(3), a defendant convicted of first-degree murder faces a mandatory minimum 99–year term of imprisonment, with no possibility of discretionary parole, if the sentencing judge finds by clear and convincing evidence that the defendant subjected the victim to substantial physical torture. The question is whether this statute violates a criminal defendant's right to trial by jury and the defendant's right to demand proof beyond a reasonable doubt—because, under the statute, this mandatory sentence hinges on an issue of fact that is decided by a judge (rather than a jury) using a "clear and convincing evidence" standard of proof.

In 2002, based on the United States Supreme Court's decision in *Apprendi v. New Jersey*,[1] and on its own earlier decision in *Donlun v. State*,[2] the Alaska Supreme Court held that this sentencing statute was constitutional—that it did not violate a defendant's right to jury trial. *Malloy*, 46 P.3d at 957.

But two years later, in *Blakely v. Washington*,[3] the United States Supreme Court issued a more expansive interpretation of *Apprendi*. The defendant in this case, Maureen Alice Malloy, argues that the *Blakely* decision now shows that the Alaska Supreme Court's decision was wrong—that the first-degree murder sentencing statute is, indeed, unconstitutional to the extent that it imposes a 99–year mandatory minimum sentence based on an issue of fact decided by the sentencing judge.

For the reasons explained here, we conclude (1) that Malloy's position is wrong as a matter of federal constitutional law, and (2) that we have no authority to alter the Alaska Supreme Court's resolution of this jury trial issue under Alaska constitutional law.

This appeal also raises a separate issue that neither we nor the Alaska Supreme Court addressed in the earlier round of appellate litigation. Not only does the sentencing judge's finding of substantial physical torture trigger a mandatory minimum 99–year term of imprisonment with no possibility of *discretionary* parole, but it also triggers another consequence: the defendant does not accrue good time credit under AS 33.20.010(a)—and, thus, the defendant will never be released on *mandatory* parole under the provisions of AS 33.20.030–040.

This problem was not addressed in the parties' original briefs. When we became aware of this issue, we directed the parties to file supplemental briefs on the question of whether, under *Blakely*, the State is prohibited from imposing this denial of good time credit unless the aggravating circumstance is submitted to a jury (and proved beyond a reasonable doubt).

In its supplemental brief, the State has conceded that Malloy is not subject to this denial of good time credit, but on a separate ground from the *Blakely* issue that we asked the parties to address.

The particular clause of AS 33.20.010(a) that denies good time credit to first-degree

1. 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

2. 527 P.2d 472 (Alaska 1974).

3. 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

murder defendants who receive a mandatory 99–year sentence did not take effect until June 1996—about seven months after Malloy committed her offense. The State therefore admits that, apart from any jury trial problem under *Apprendi* and *Blakely*, application of this statute to Malloy would violate the constitutional guarantee against *ex post facto* penal laws.

For the reasons explained here, we accept the State's concession of error. We therefore do not reach the issue of whether this statutory provision violates the right to jury trial as interpreted in *Apprendi* and *Blakely*.

Finally, Malloy received the statutory maximum sentence of 5 years' imprisonment for the class C felony of tampering with evidence. The superior court had no authority to impose this sentence in the absence of aggravating factors, and the record does not disclose any obvious *Blakely*-compliant aggravators. We therefore vacate Malloy's sentence for evidence tampering, and we direct the superior court to re-sentence her in conformity with *Blakely*.

*Background facts and prior legal proceedings*

During early November 1995, Maureen Alice Malloy restrained another woman, K.H., in a motel room in Spenard. For more than a week, Malloy inflicted many brutal physical and sexual assaults on K.H., all the while keeping her sedated with a combination of alcohol and muscle relaxants. Finally, during the early morning of November 9, Malloy drove K.H. to a remote location on the Campbell Airstrip Road; there, Malloy murdered K.H. by slashing her throat and stabbing her in the chest.

A few days later, Malloy arranged for a friend to mail the murder weapon and K.H.'s belongings to another friend of Malloy's in Washington State. Malloy telephoned this friend and instructed her to burn the contents of the package when it arrived.

Based on this conduct, Malloy was convicted of kidnapping, first-degree murder, and tampering with evidence. For these crimes, Malloy received a composite sentence of 159 years' imprisonment, with no eligibility for

discretionary parole during the first 129 years of this sentence.

Malloy's sentencing for first-degree murder was governed by the version of AS 12.55.125(a) that was enacted by the Alaska Legislature in 1992. Before 1992, this statute declared that the penalty range for first-degree murder was a mandatory minimum sentence of 20 years and a maximum sentence of 99 years. But after the 1992 amendment to AS 12.55.125(a), the crime of first-degree murder carries a mandatory minimum penalty of 99 years' imprisonment (*i.e.*, the mandatory minimum and the statutory maximum become the same) if: (1) the murder was perpetrated on a police officer, fire fighter, or corrections employee engaged in the performance of their duties; or (2) the defendant had been previously convicted of murder in either the first or second degree; or (3) the sentencing judge finds, by clear and convincing evidence, that the defendant "subjected the victim to substantial physical torture".

Moreover, when the legislature amended AS 12.55.125(a) in 1992, the legislature also amended AS 33.16.090, the statute governing eligibility for discretionary parole. Under the amended version of AS 33.16.090(b), a defendant who receives a mandatory minimum 99–year sentence for first-degree murder is barred from applying for discretionary parole during the service of this sentence.

As the parties prepared for Malloy's sentencing, the State gave notice that it intended to seek a 99–year mandatory minimum sentence under the "physical torture" clause of AS 12.55.125(a)—*i.e.*, by proving that Malloy subjected K.H. to substantial physical torture before killing her. At Malloy's sentencing hearing, the judge concluded that the State had proved this aggravating factor by clear and convincing evidence, and the judge therefore sentenced Malloy to 99 years' imprisonment without possibility of discretionary parole.

Malloy appealed this sentence, arguing that the first-degree murder sentencing statute was unconstitutional to the extent that it subjected defendants to a 99–year mandatory minimum penalty based on a finding of fact that was not submitted to a jury. Malloy

principally relied on the Alaska Supreme Court's decision in *Donlun v. State,* 527 P.2d 472 (Alaska 1974).

In May 2000, this Court ruled in Malloy's favor on this point: *see Malloy v. State,* 1 P.3d 1266, 1289 (Alaska App.2000).

Several weeks later, two significant events occurred: the Alaska Supreme Court granted the State's petition for hearing in *Malloy,* and the United States Supreme Court issued its decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

In *Apprendi,* the United States Supreme Court held that the Sixth Amendment to the federal Constitution guarantees defendants the right to trial by jury, and the right to demand proof beyond a reasonable doubt, on any issue of fact (other than a prior conviction) which will subject the defendant to a higher maximum sentence. *Id.,* 530 U.S. at 490, 120 S.Ct. at 2362–63.

At the same time, however, the Supreme Court indicated that it viewed its decision in *Apprendi* as being consistent with its decision in *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)—an earlier case in which the Supreme Court approved a sentencing statute under which a defendant's *mandatory minimum* sentence hinged on aggravating factors found by the sentencing judge. *See Apprendi,* 530 U.S. at 495, 120 S.Ct. at 2365. (But see Justice Thomas's concurring opinion in *Apprendi,* 530 U.S. at 521, 120 S.Ct. at 2379, where he declared that a defendant's right to jury trial "[sh]ould cover the *McMillan* situation of a mandatory minimum sentence [hinging on judge-tried facts]".)

Two years later, in May 2002, the Alaska Supreme Court reversed this Court's decision in Malloy's case. Applying the *Apprendi* interpretation of the right to jury trial, the supreme court upheld the constitutionality of the first-degree murder sentencing statute. *State v. Malloy (Malloy II),* 46 P.3d 949 (Alaska 2002).

The supreme court pointed out that Malloy's sentence of 99 years' imprisonment without possibility of parole was no greater than the maximum sentence she might other-

wise have received, even without proof of the "physical torture" ·aggravating factor. That is, even without proof of this aggravating factor, Malloy still faced a maximum sentence of 99 years' imprisonment, and the sentencing judge had the authority, under AS 12.55.115, to restrict or totally eliminate Malloy's eligibility for discretionary parole. *Malloy II,* 46 P.3d at 954.

Based on this analysis, the supreme court concluded that the first-degree murder sentencing statute did not violate the Sixth Amendment right to jury trial announced in *Apprendi*—because proof of the aggravating factors listed in the statute did not subject a defendant to a higher maximum sentence. *Id.* at 955.

In addition, the supreme court·declined to interpret its earlier decision in *Donlun* as affording any greater right to jury trial than the Sixth Amendment right recognized in *Apprendi.* The court declared:

> [Both] *Donlun* and *Apprendi* recognize that an increased sentence resulting from a finding of statutory aggravating circumstances is not a harsher maximum sentence ... unless [the increased sentence] falls outside the outer limits of the range of sentences that the court could otherwise impose.
>
> . . .
>
> Both *Donlun* and *Apprendi* ... require [a court] to compare the harshest sentence ... available [absent] a finding of aggravating circumstances ... with the ... harshness of the sentence ... mandated by ... a finding [of aggravating circumstances].

*Malloy II,* 46 P.3d at 955, 956.

The supreme court did not address the separate problem of the denial of good time credit and Malloy's consequent ineligibility for mandatory parole release-apparently because no one alerted the supreme court to the fact that the legislature had separately amended AS 33.20.010(a) (the statute governing good time credit) in 1996. The parties in *Malloy* focused solely on the 1992 amendment to the first-degree murder sentencing statute, AS 12.55.125(a), and this Court did not spot the mandatory parole issue when we considered Malloy's first appeal.

In late June 2004, the United States Supreme Court issued its decision in *Blakely*. Seven weeks later, Malloy filed a motion under Alaska Criminal Rule 35(a) to correct her sentence. In this motion, Malloy argued that it was now clear that the Alaska Supreme Court's decision rested on a mistakenly narrow interpretation of the Sixth Amendment right to jury trial.

According to Malloy, the *Blakely* decision demonstrated that Alaska's first-degree murder sentencing statute was unconstitutional to the extent that the mandatory 99–year sentence hinged on an issue of fact that was not submitted to a jury. Malloy interpreted *Blakely* as holding that "mandatory penalties for … a crime … [can] not be increased [based on] any fact not previously decided by a jury".

Erroneously referring to the normal 20–year mandatory minimum sentence for first-degree murder as the "presumptive term" for this offense, Malloy argued that the superior court had no authority to exceed this 20–year minimum term of imprisonment unless a jury found aggravating factors. Malloy further argued that her murder sentence violated *Blakely* to the extent that the judge's finding of substantial physical torture made her ineligible for discretionary parole. And finally, Malloy argued that her 5–year sentence for evidence tampering violated *Blakely* because the superior court had no authority to sentence her to more than 2 years to serve (the presumptive term of imprisonment for a second felony offender convicted of the same crime) unless the State proved aggravating factors. *See* former AS 12.55.125(k)(2).

Superior Court Judge Philip R. Volland denied Malloy's motion for the correction of her sentences on two separate bases.

First, Judge Volland ruled that *Blakely* was not retroactive. We have since ruled otherwise. *See Smart v. State*, 146 P.3d 15, 35 (Alaska App.2006).[4]

Second, Judge Volland ruled that even if *Blakely* was retroactive, Malloy would not be entitled to relief—because sentencing for first-degree murder is not governed by Alaska's presumptive sentencing law. As Judge Volland correctly noted, "[t]he sentencing range for first-degree murder is always 20 to 99 years['] imprisonment and [this range] is not affected by the presence or absence of [the] aggravating [and] mitigating factors [codified in AS 12.55.155(c)-(d) ]."

(See *Allen v. State*, 56 P.3d 683, 684–85 (Alaska App.2002) (order on rehearing), where this Court held that the presence or absence of the aggravating factors codified in AS 12.55.155(c) does not affect a sentencing judge's authority when imposing a sentence for murder, because murder sentences are not governed by Alaska's presumptive sentencing law.)

Judge Volland did not, however, address Malloy's argument that her sentence for evidence tampering was imposed in violation of *Blakely*.

*Malloy's argument that the Alaska Supreme Court's decision in her case is inconsistent with the United States Supreme Court's later decision in Blakely*

In *Malloy II*, the Alaska Supreme Court stated (in dictum) that Alaska's pre-March 2005 presumptive sentencing law did not violate a defendant's right to jury trial under the federal Constitution. 46 P.3d at 956–57. As Malloy correctly points out, subsequent events—in particular, the decision in *Blakely v. Washington*—have shown that this dictum was wrong.

 However, sentencing for murder is not (and was not) governed by the presumptive sentencing law. Rather, when the Alaska Legislature enacted presumptive sentencing, the legislature retained indeterminate sentencing (within a specified range of imprisonment) for both first- and second-degree murder.[5] As we pointed out in *Carlson v.*

---

4. Hearing granted on February 13, 2007. See *State v. Smart*, Alaska Supreme Court File No. S–12493.

5. *See* AS 12.55.125(a) (sentences for first-degree murder) and 125(b) (sentences for second-degree murder); *Carlson v. State*, 128 P.3d 197, 203–04 (Alaska App.2006). *See also Page v. State*, 657 P.2d 850, 855 (Alaska App.1983).

*State,* "[w]ithin this range of punishment, sentencing [for murder] is indeterminate; that is, no further fact-finding is necessary to invest the sentencing judge with the authority to impose any sentence within this range." 128 P.3d 197, 209 (Alaska App.2006).

Malloy appears to acknowledge this fact—because, on appeal, she does not renew the argument that her sentence could not exceed 20 years' imprisonment in the absence of jury findings on aggravating factors. However, Malloy continues to assert that the first-degree murder sentencing statute violates the Sixth Amendment right to jury trial (as interpreted in *Blakely* ) to the extent that a defendant becomes ineligible for discretionary parole if the sentencing judge finds that the defendant engaged in substantial physical torture of the victim.

As the Alaska Supreme Court pointed out in *Malloy II,* a sentencing judge in Alaska always has the authority to restrict a defendant's normal eligibility to apply to the Parole Board for discretionary parole—or to even completely eliminate a defendant's eligibility for discretionary parole. *See* AS 12.55.115; *Stern v. State,* 827 P.2d 442, 450 (Alaska App.1992). Thus, when a defendant is convicted of first-degree murder, the sentencing judge already possesses the authority—based on the jury's verdict alone—to impose the maximum term of imprisonment (99 years) and to order that the defendant not be eligible for discretionary parole.

(Likewise, even in the absence of mitigating factors, the sentencing judge possesses the authority to impose the minimum sentence allowed by law: 20 years' imprisonment, with no special restriction on the defendant's eligibility to apply for discretionary parole. That is, the defendant may apply for discretionary parole after serving the portion of their sentence specified in AS 33.16.090.)

Given this indeterminate sentencing framework for first-degree murder, a finding of substantial physical torture limits a judge's sentencing discretion in two ways. First, the range of authorized terms of imprisonment shrinks dramatically: the mandatory minimum sentence rises from 20 to 99 years— making it equal to the statutory maximum sentence. In other words, the sentencing judge no longer has the discretion to impose less than the statutory maximum term of imprisonment. Second, the judge's discretion with regard to the defendant's eligibility for discretionary parole likewise vanishes: the judge has no choice but to exercise the full extent of the authority granted by AS 12.55.115, thus completely eliminating the defendant's eligibility for discretionary parole.

But the fact that the defendant's mandatory minimum sentence now equals what otherwise would have been the maximum authorized sentence does not raise a problem under *Apprendi* and *Blakely.* The Alaska Supreme Court correctly characterized the federal law on this point in *Malloy II:* "an increased sentence resulting from a finding of statutory aggravating circumstances is not a harsher maximum sentence ... unless [the increased sentence] falls outside the outer limits of the range of sentences that the court could otherwise impose". 46 P.3d at 955.

At about the same time that the Alaska Supreme Court upheld our first-degree murder sentencing statute in *Malloy II,* the United States Supreme Court decided *Harris v. United States,* 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002). In *Harris,* 536 U.S. at 563–64, 122 S.Ct. at 2417–18, the Supreme Court confirmed that its earlier holding in *McMillan v. Pennsylvania* remains good law despite the expansion of the right to jury trial in *Apprendi.* That is, a legislature does not violate the Sixth Amendment right to jury trial by increasing a defendant's *mandatory minimum* sentence (as opposed to the defendant's *maximum* sentence) based on· aggravating facts that are tried to, and decided by, the sentencing judge.

Given the United States Supreme Court's decision in *Harris,* we readily conclude that the Alaska Supreme Court's decision in *Malloy II* remains consistent with the Sixth Amendment right to jury trial, even after *Blakely.*

It is true that, under this Court's sentencing decisions, a judge who proposes to exercise the authority conferred by AS 12.55.115—*i.e.,* the authority to restrict a defendant's eligibility for discretionary parole— must "specifically address the issue of parole

restriction [and must set] forth with particularity his or her reasons for concluding that the [normal] parole eligibility prescribed by AS 33.16.090 and AS 33.16.100(c)-(d) is insufficient to protect the public and insure the defendant's reformation." *Stern v. State*, 827 P.2d at 450.[6]

One might conceivably argue that the "particular reasons" required by *Stern* constitute a finding of fact that must be submitted to a jury under *Blakely*. But we have already rejected this same *Blakely* argument concerning the findings that a judge must make when imposing consecutive sentences that total more than the maximum sentence for the defendant's single most serious offense. *See Vandergriff v. State*, 125 P.3d 360, 363 (lead opinion) and 370–72 (Mannheimer, J., concurring) (Alaska App.2005).

See also *Carlson v. State*, 128 P.3d 197, 208–211 (Alaska App.2006), where we held that *Blakely* does not require a jury trial regarding the facts that a sentencing judge relies on when deciding whether to impose a second-degree murder sentence exceeding the *Page* benchmark range of 20 to 30 years to serve.[7]

▮▮▮▮ We reach the same conclusion here: *Blakely* does not require a jury trial regarding facts that a judge relies on when exercising the sentencing discretion already afforded by the applicable statutes. Thus, a defendant has no Sixth Amendment right to jury trial regarding the factors that a judge may rely on when deciding whether to exercise the statutory authority to restrict or eliminate the defendant's eligibility for discretionary parole. And the Supreme Court's decisions in *McMillan* and *Harris* show that the same holds true even when a sentencing statute *obliges* the sentencing judge to exercise this pre-existing authority if specified facts are proved.

For these reasons, we reject Malloy's argument that the *Blakely* decision has undercut the Alaska Supreme Court's conclusion in *Malloy II*. The first-degree murder sentencing statute, AS 12.55.125(a), and the corresponding provision of the discretionary parole statute, AS 33.16.090(b), do not violate a defendant's Sixth Amendment right to jury trial.

*Malloy's argument that, even if the Alaska Supreme Court's decision is consistent with Blakely, we should nevertheless construe the Alaska Constitution's guarantees of jury trial and due process more broadly than the corresponding federal law*

▮▮▮▮ Malloy argues that even if the supreme court's decision in *Malloy II* remains consistent with the holdings in *Apprendi* and *Blakely*, we should nevertheless construe the Alaska Constitution's jury trial clause[8] and due process clause[9] more broadly than their federal counterparts, so as to grant defendants a right to jury trial (and a right to demand proof beyond a reasonable doubt) with respect to the aggravating factors codified in the first-degree murder sentencing statute, AS 12.55.125(a)—because proof of any of these aggravating factors requires such a drastic increase in a defendant's minimum sentence.

As we have explained, the Alaska Supreme Court rejected this very argument in *Malloy II*, and neither the text of the Alaska Constitution nor the Alaska Supreme Court's interpretation of that document has changed since then. Accordingly, we have no authority to re-examine or second-guess the supreme court's resolution of this point in *Malloy II*.

*The question of whether AS 33.20.010(a) violates the Sixth Amendment right to jury as interpreted in Blakely to the extent that this statute deprives first-degree murder defendants of the right to earn good time credit (and thus obtain release on mandatory parole) if the sentencing judge finds that the defendant subjected the victim to substantial physical torture*

▮▮▮▮ When we were researching the issues raised by Malloy in this appeal, we

---

**6.** Citing *Newell v. State*, 771 P.2d 873, 876 (Alaska App.1989); *Spencer v. State*, 642 P.2d 1371, 1377 (Alaska App.1982). *See also Lawrence v. State*, 764 P.2d 318, 321 (Alaska App.1988); *Bloomstrand v. State*, 656 P.2d 584, 591 (Alaska App.1982).

**7.** *See Page v. State*, 657 P.2d 850, 854–55 (Alaska App.1983).

**8.** Article I, Section 11.

**9.** Article I, Section 7.

discovered that, in 1996, the Alaska Legislature amended the good time credit statute, AS 33.20.010(a), to increase the penalty for certain defendants convicted of first-degree murder. The amended version of the statute declares that defendants sentenced to a mandatory 99–year term of imprisonment for first-degree murder are no longer eligible to earn good time credit while they serve their sentences—meaning that these defendants will never be eligible for mandatory parole under AS 33.20.030–040.

We asked the parties to brief whether, consistent with *Apprendi* and *Blakely*, the legislature could constitutionally impose this denial of good time credit based on an issue of fact that was not resolved by a jury (using a "beyond a reasonable doubt" standard of proof).

The State responded with a concession of error—not on the jury trial issue, but rather on the ground that application of the amended good time credit statute to Malloy would violate the *ex post facto* clauses of both the federal and state constitutions—because Malloy committed her crimes in late 1995, and the amended statute did not take effect until June 1996. *See* SLA 1996, ch. 7, §§ 15 & 18.

In *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), the United States Supreme Court held that, under the *ex post facto* clause of the federal Constitution, a law making it more difficult for a person to accrue good time credit can not lawfully be applied "to events occurring before its enactment". *Id.*, 450 U.S. at 29, 101 S.Ct. at 964. The Supreme Court concluded that such a law imposes an increased punishment for the defendant's crime—and, thus, the *ex post facto* clause forbids a state from applying such a law to a defendant whose offense preceded the enactment of the law. *Id.*, 450 U.S. at 35–36, 101 S.Ct. at 968.

We note that AS 33.20.010(a), by its terms, purports to apply to Malloy even though her offense predates the enactment of the statute. The statute denies good time credit to all

prisoners "sentenced to a mandatory 99–year term of imprisonment under AS 12.55.125(a) after June 27, 1996". Malloy was sentenced on August 13, 1997. Thus, she is apparently covered by the statute.

But the *ex post facto* clause looks to the date of a defendant's offense, not the date of a defendant's sentencing. *Weaver*, 450 U.S. at 30–31, 101 S.Ct. at 965. Thus, to the extent that the language of AS 33.20.010(a) covers prisoners whose offenses were committed before the amended statute took effect, it is unconstitutional.

For these reasons, we conclude that the State's concession of error is well-founded, and we accept that concession.[10] The Department of Corrections must give Malloy normal good time credit.

*Why we vacate Malloy's sentence for evidence tampering*

■ Malloy was convicted of evidence tampering, a class C felony.[11] Because Malloy was a first felony offender, her sentencing was governed by former AS 12.55.125(k)(2). This statute specified that Malloy could not receive more than 2 years to serve (the presumptive term of imprisonment that would apply to a second felony offender convicted of the same offense[12]) unless the State proved one or more of the aggravating factors listed in AS 12.55.155(c) or proved extraordinary circumstances as defined in AS 12.55.165.

The State proposed several aggravators at Malloy's sentencing, and the sentencing judge found them to be proved. Based on the presence of these aggravators, the judge sentenced Malloy to the 5–year maximum term of imprisonment for a class C felony— although she ordered that this 5–year sentence run concurrently with Malloy's sentences for murder and kidnapping.

As Malloy points out in her brief, this sentence raises a *Blakely* problem. Not one of the State's proposed aggravators is *Blake-*

---

10. *See Marks v. State*, 496 P.2d 66, 67–68 (Alaska 1972) (holding that, in criminal cases, an appellate court must independently evaluate the government's concession of error).

11. *See* AS 11.56.610(b).

12. *See* former AS 12.55.125(e)(1) (pre-March 2005 version).

*ly*-compliant on its face. That is, none of the aggravators rests solely on Malloy's prior criminal convictions, or flows directly from the jury's verdicts at her trial, or was expressly conceded by Malloy.

Accordingly, we must vacate Malloy's sentence for evidence tampering. The State may choose to have the superior court suspend 3 years of this sentence (to bring the sentence within the range of sentences authorized by former AS 12.55.125(k)(2) in the absence of aggravating factors). Alternatively, the State may attempt to demonstrate to the superior court that one or more of its proposed aggravators was *Blakely*-compliant. Finally, the State may seek the opportunity to present its proposed aggravators to a jury. *See State v. Dague*, 143 P.3d 988, 1013–14 (Alaska App.2006) (suggesting that this alternative may remain open to the State).

We do not retain jurisdiction over this matter.

*Conclusion*

We hold that, consistent with the Sixth Amendment right to jury trial recognized in *Apprendi* and *Blakely*, and consistent with the rights to jury trial and due process of law guaranteed by the Alaska Constitution, the legislature can deny discretionary parole to a defendant convicted of first-degree murder if the sentencing judge finds that the defendant engaged in substantial physical torture of the victim. This aspect of the superior court's decision is AFFIRMED.

We further hold that, under the *ex post facto* clauses of the federal Constitution and the Alaska Constitution, the portion of AS 33.20.010(a) that purports to deny good time credit to Malloy can not constitutionally be applied to her—because her offense predates the enactment of the statute. The Department of Corrections must give Malloy good time credit under the normal rules.

Finally, we VACATE Malloy's sentence for evidence tampering, and we direct the superior court to re-sentence Malloy in conformity with *Blakely*.